HOUSTON RICE COMPANY *v.* REEVES.

Opinion delivered June 3, 1929.

*Joseph Morrison,* for appellant.

*M. F. Elms,* for appellee.

MEHAFFY, J. The appellee brought suit in the Arkansas Circuit Court for $322, alleging that this amount was due him for brokerage commission for the sale by him for the Houston Rice Company of 4,025 pockets of rice to certain parties named. His complaint showed the amount of commission due for each sale, and as to four of the sales there was no controversy in any way. The appellant shipped the rice and the purchaser paid for it according to the contract made by appellee. The Wheeler Wholesale Grocer Company, however, refused to accept the rice shipped to it, and appellee claimed a commission upon this sale of $64.

The appellant answered, admitting the allegations of the complaint, but filed a counterclaim, alleging that appellee undertook, as broker, to sell the Wheeler Wholesale Grocer Company 800 pockets of rice at a price of 6 5/16 cents per pound. The appellee advised this appellant by wire that the sale was consummated, and confirmed the wire with written acceptance, and caused to be forwarded shipping instructions. It alleged that it complied with the contract, and that the Wheeler Wholesale Grocery Company refused to accept, and set up as a basis for their refusal that they had not contracted with the plaintiff for the purchase of the rice. They had filed no agreement. It also alleged that it

immediately advised appellee by wire to secure the written confirmation, and that he failed or refused to do this, and that it was impossible to compel the Wheeler Wholesale Grocery Company to accept the rice, and that it had to pay demurrage amounting to $66, storage amounting to $39.95, and that it had to sell the rice for 5 7/8 instead of 6 5/16 cents, thereby losing the difference, and asked judgment against appellee for $496.77.

There was a judgment for the appellee for $278. Appellant filed motion for a new trial, which was overruled, and this appeal is prosecuted to reverse the judgment of the circuit court.

Appellant says there are two questions in the case. First, is a broker or agent liable to his principal for damages in failure to carry out principal's instructions? And second, is there evidence in the record sufficient to support the verdict and judgment of the trial court?

We agree with the appellant that the agent is bound to the exercise of the utmost good faith towards his employer or principal. If one who undertakes the business of another is capable of managing it, and neglects to do so with proper care, and damages result from his failure to exercise proper care, he would, of course, be liable. There is no question in this case about the agent being capable. The only question is, was he guilty of negligence that resulted in a loss to the principal?

"Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business, or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of commonsense and honesty, as well as of law." *Walthour* v. *Pratt*, 173 Ark. 617, 292 S. W. 1017; *Coyne Brothers* v. *Feazel*, 129 Ark. 163, 195 S. W. 391; *Wright* v. *Bennett*, 150 Ark. 154, 233 S. W. 1089.

The broker in the instant case sold to the Wheeler Wholesale Grocery Company 800 sacks of rice, and notified the Houston Rice Company, whereupon the Houston Rice Company confirmed the sale, and sent to appellee contracts to be signed by the Wheeler Wholesale Grocery Company. If it were necessary to have these contracts signed before the shipment of the rice, then the appellant itself was guilty of negligence in shipping the rice before it received the signed contracts.

The evidence shows in this case that the appellee did all he could do; he received the contracts from the appellant, and immediately sent them to the purchaser to be signed, but they were not signed. The appellee could do nothing else. He could not compel, and it was not his duty to try to compel, the purchaser to sign the contract. It was his duty to present it or send it to him to be signed, just as he did, and the fact that the grocery company or purchaser failed to sign the contract certainly could not constitute negligence on the part of the broker.

Mr. Mooring testified that he forwarded the contract to the appellee to be signed, and that he had no record of ever receiving it back; that, after having sent the contract and failing to get it signed and returned, he shipped the rice to the Wheeler Grocery Company. Mr. Mooring also testified that they were at the time dealing with from 75 to 100 brokers, and that he had knowledge of the methods and customs of trade, and that the appellee, along with brokers in a good many other markets, usually and customarily secured the buyer's signature on their sales confirmation blanks at the time the orders were placed by telegraph. He said, however, that there are a great many brokers in a good many markets that do not use those forms at all. He testified that, in so far as the Reeves Company is concerned, it was his knowledge that they almost always sent signed sales memorandum in connection with the bookings they handled for them. If that were the custom,

and the seller relied on that, then it was certainly negligent in shipping the rice before it received the signed memorandum. This witness also said that a very large portion of the rice crop is moved each year on sales consummated by telegraph on which no other contract or evidence exists. If this is true, if the contract rested on the telegraph messages, and no written contract was to be signed, then the Reeves Company certainly did all that it was expected to do. If, on the other hand, in order to consummate the sale and justify the seller in shipping the rice, it was necessary to have a signed contract, then in that event the Reeves Company, according to the evidence, did all that it could be required to do. In other words, we do not think that the evidence shows that the Reeves Company was guilty of any negligence.

In this case the parties waived a jury, and the cause was submitted to the court sitting as a jury, and the finding of the judge when sitting as a jury is as binding as the verdict of a jury, and cannot be set aside by this court if there is any substantial evidence to sustain it. The most that can be said in this case by appellant is that the evidence was conflicting. That being true, the finding of the court is conclusive.

As to the next question, that is, whether there was sufficient evidence to support the judgment, it is only necessary to say that the answer admitted the allegations of the complaint, and it was admitted that the sales claimed to have been made by the Reeves Company were actually made by it, and there is no controversy about the commission. Whether or not the appellee would have been entitled to a commission of $64 for the sale to the grocery company is not involved in this appeal, the appellee having taken no appeal as to it.

There is in evidence a letter from the grocery company, which, whether written by the grocery company or not, would, we think, be sufficient to justify both parties in believing that the grocery company had purchased the rice and intended to pay for it. And that letter is

addressed to Houston Rice Mills, Stuttgart, Arkansas, and is as follows:

"Gentlemen:

"Referring to two cars of rice booked with you, in shipping out will thank you to route in connection with the Frisco lines, care Seaboard at Birmingham, rates being equal, etc. We especially want Seaboard routing, as we are located on their tracks at Marion.

"Yours truly,

"The Wheeler Wholesale Grocery Company."

This was signed in typewriter. It was, however, written on the letterhead of the grocery company; and, in addition to this letter, a letter was received from the railroad agent also about routing the shipment.

We have reached the conclusion that the evidence is amply sufficient to support the verdict and judgment of the court, and the judgment is therefore affirmed.