THE NATIONAL LIFE AND ACCIDENT INSURANCE
COMPANY *v.* HOUSE.

[No. 15,550.  Filed June 16, 1937.  Rehearing denied October
15, 1937.  Transfer denied December 16, 1937.]

*Craig & Craig,* and *Thomas J. Tyne, Jr.,* for appellant.

*Hurst Miller, McDonald & McDonald, Lockyear & Lockyear,* and *R. Owen Williams,* for appellees.

KIME, J.—The appellee in an amended paragraph of complaint alleged that she was the beneficiary in a policy of industrial insurance issued by the appellant on the life of one Earl House, a copy of which policy was attached to and made a part of the complaint; that the policy was issued on February 6, 1933, in consideration of a premium of 35c being paid each week thereafter; that by the terms of the policy appellant agreed to pay to the beneficiary at the death of the insured the sum of $343.00; that the weekly payments were duly made to and including the week of June 8, 1933, the day on which the insured died; that the proper proofs of death and all conditions of the policy on the part of the insured and beneficiary had been performed and that she was entitled to the face of the policy plus six per cent interest from date of death of the insured.

To this amended paragraph of complaint, so far as is material here, the defendant answered in three paragraphs and in the third of which, for defense to the cause of action alleged in the complaint, said that said Earl House executed a written application for the policy of insurance in question and therein said that he was not insured in the appellant company.

The answer further alleged that the policy contained the following provision:

"Unless otherwise stated in the 'Space for Endorsement' in a waiver signed by the President or Secretary, this Policy is void if the INSURED before its date has been rejected for insurance by this or any other company, order or Association; or if any Policy on the life of the Insured has been issued by this Company and is in force at the date hereof, unless this Policy contains an endorsement signed by the President or Secretary that such prior Policy may be in force. The Company shall not be presumed or held to know of the existence of any previous rejection, or any previous Policy unless such fact or facts shall be expressly shown in the application, and the issue of this Policy shall not be deemed a waiver of this condition."

That the insurer had no way of knowing whether or not the insured was carrying other policies with the company; that the agent who procured the application specifically asked the insured whether or not he had other policies with the company and that the insured told him that he previously had but that they were not now in force; that the agent insisted that insured communicate with his father to ascertain definitely whether or not the policies were in force; that before the policy was issued the insured told the agent that he had information from his father at Nashville, Tennessee, where the other policies had been issued, to the effect that these policies were not now in force and that the insured falsely and frauduently represented to the appellant's agent that he had no other policies in force at the time of making the application; that the policies in force on appellant aggregated more than $400.00 and that if the appellant had known this it would not have issued the policy sued upon for the reason that a rule of the company prevented it; that the insured caused the premiums on the three policies issued by the Nashville

office to be paid by his father, and that on the policy in suit the application was made to the agent in Evansville and all the premiums on said last issued policy were paid in Evansville; that the agent who collected and received the premiums on the first three policies had no notice or knowledge that insured had applied for another policy or that such policy had been issued to him; that the agent of the appellant in Evansville who delivered the policy sued on and who collected and received the premiums thereon had at no time prior to the death of insured any notice or knowledge that insured had obtained the three policies in Nashville; that these policies were all issued by the appellant's industrial department and were small industrial policies, premiums ranging from ten cents to thirty-five cents per week; that this department issued 15,000 to 20,000 policies per week; that the appellant did not, at the time of the issuance of the policy in suit, keep a list of or ledger account with the holders of its industrial policies but the company kept its record solely by number of the policy; that it had no means whatever of identification of the applicant for additional insurance; that the cost of conducting its business in any manner other than by the numbers of the policies would add to the cost and expense of the insured and make it prohibitive; that the provision above quoted was inserted in all industrial policies for the purpose of insuring non-duplication of risks and that the policy sued on had not been endorsed as provided thereby.

To this third paragraph of answer to the amended first paragraph of complaint the appellee demurred, for the reason that the facts stated in said paragraph of answer were not sufficient to constitute a defense to the complaint herein. The memoranda thereto alleged that as to each of the policies of insurance some agent or officer of the company had knowledge at all times; that

the appellant was charged with knowledge of its agents and officers and could not avoid said knowledge by any bookkeeping method pursued by it; that the policy herein sued on did not in any way refer to the application pleaded in the answer; that said application was not made a part of the policy and that the policy itself provided that it contained the entire agreement and that the prohibition or inhibition pleaded in the answer was one made for the benefit of the insurer and could be waived by it; that the defendant is charged with all notice or knowledge possessed by any or all of its agents procured by them in the conduct of its business and in line of their respective duties to said appellant; that the appellant could not be relieved of the liability because some particular agent or agents did not have knowledge of facts known to other agents or representatives of the company; that the insured had no knowledge of any rules of the company as to any maximum amount of insurance that it could issue on the life of any particular individual; that the allegation that the appellant company had no knowledge or notice when it wrote the policy sued on to the effect that the insured was carrying other policies of insurance with the company is a conclusion and is not sustained by any averment of fact, but on the contrary is in irreconcilable conflict with the facts which are specially alleged in said paragraph of answer; that the conditions of the clause above quoted are void and not binding upon the appellee for the reason that under the facts pleaded it appears that the appellant had waived said provisions; that the parties hereto in making the contract were dealing at arms length, no relation of trust or confidence existed between them; that it affirmatively appears that the facts were equally available to the insurer; that it had just as good an opportunity to know the facts as did the insured; that the alleged misrepresentation was not to any fact peculiarly

within the knowledge of the insured of which the insurer did not have an equal or better opportunity to know and that no facts were pleaded justifying the insurer in relying upon the alleged misrepresentation.

The court sustained this demurrer whereupon a trial was had which eventually resulted in a judgment being returned for the appellee in the sum of $380.27. The only error assigned here for reversal is that the court erred in sustaining the demurrer of the appellee to the third paragraph of appellant's answer to the amended first paragraph of complaint. It might be noted in passing that there were originally two paragraphs of amended complaint but the second one was dismissed prior to the trial.

The appellant contends under his propositions, points and authorities that the making of the alleged false representations by the insured in his application was a misrepresentation material to the risk; that this rendered the policy voidable; that there was no specific endorsement on the policy and that this also made it void; that since the insurer relied upon the expressed representations of the insured and having no actual knowledge to the contrary and inasmuch as the answers were false and fraudulent that they were in contravention of the terms thereof and hence the policy was void; that the provisions of the policy in the clause above quoted made the policy in suit void as other policies had been issued, and since the insurer could not be presumed or held to know of the existance of such prior policies unless such facts were specifically shown by the application; that the issuance of the policy in suit should not be deemed a waiver of such conditions because they were not illegal nor against public policy and were in such contract as the parties had the right to make; that since this was an industrial policy and the insurer's books did not reveal the names of the policy holders that to do

otherwise would make the cost thereof prohibitive and for that reason the insurer makes such industrial contracts in sums not to exceed $400.00; and that under such circumstances the general rule that insurance companies are charged with knowledge of prior policies should not apply.

The appellee contends that the insurer is charged with the knowledge possessed by its agents procured in the conduct of insurance business and in line of their respective duties and that the agent of the insurer at Evansville acting within the scope of his authority relative to the risk here in question, had knowledge that the insured had had other policies with the insurer; that this knowledge was binding upon the insurer; that since the insurance company had this knowledge which could have enabled it to declare the policy void its failure to timely do so coupled with the further reason that it accepted premiums on the policy in question from February until June the forfeiture provision was thereby waived.

The pleadings at the time of the ruling on the demurrer disclosed that the insured had applied for the policy in suit on February 6, 1933, and that the agent of the insurer was specifically informed that other policies in this company had been in existence; that upon inquiry by the insured information was given him to the effect that the policies were not then in existence. That with this knowledge on the part of the insurer the policy in suit was issued and that from that date until the insured died on June 8, 1933, the insurer had accepted the weekly premiums on the policy.

The forfeiture clause above quoted, since forfeitures are abhorrent, must be strictly construed against the insurer especially since it exacts from the beneficiary at the risk of a drastic penalty the disclosure of facts which the insurer knew or was

bound to know, while the insured might have been in absolute good faith perfectly ignorant of the exact situation. Conceding here that the alleged misrepresentations were material to the risk and which, had they been known to the insurer the policy would not have been issued, still here the insurer through its agent in Evansville had knowledge of the fact that other policies had been issued by the company and by very little effort, on the part of the insurer, the fact could have been ascertained definitely as to whether or not the policies were then in force and since appellant did not endeavor to determine the facts a very different situation obtains than when a positive misstatement peculiarly within the knowledge of the appellant is made.

"Treating, then, this forfeiture clause—for that is what in effect it is—with the severe strictness which, under the adjudged cases, its harshness merits in such instances as this record exhibits, it is a priori, obvious that evidence of much less probative value will be deemed sufficient to prove a waiver of this caustic provision than would be considered adequate to establish a waiver of some more reasonable or just restriction." Monohan v. Mutual L. Ins. Co. (1906), 103 Md. 145, 158, 63 Atl. 211, 5 L. R. A. (N. S.) 759.

The complaint alleges that from the date upon which the policy in question was issued to the date of the insured's death a period of seventeen weeks had expired and the insured had made at least seventeen weekly payments to the insurer which the insurer received and retained. There was no suggestion or intimation in the pleadings that the policy under and on account of which the payments were made was in any way questioned by the insurer. "It could rightfully collect and receive those premiums from the 'insured' only in the event that it considered 'him' the holder of a valid policy. If a condition of fact existed which vitiated

that policy, or which precluded it from having had validity in its inception, by virtue of a term of the contract, and that condition of fact was known by the insurer, or ought to have been known by it, and was not known by the beneficiary,—then the continuous receipt of the premiums by the insurer must be taken to indicate that the insurer did not rely on that condition of fact, but elected to waive the cause of forfeiture or invalidity, because upon no other hypothesis could it justify the collection of the premiums. It is undoubtedly true that a party cannot be said to have waived an objection of which he was not aware; and it has been insisted that the insurance company could not be held to have waived the provisions of clause or condition (in question), because it did not know when it issued the policy sued on, that it had previously written another policy on the same life." It was here alleged "... that the method pursued in keeping its records and its books prevented the company from actually knowing that there was a prior outstanding policy on the same life. But that is no answer to the asserted waiver. When courts come to deal with questions of waiver in cases like the one at bar, a rigid application of the general rule requiring that there shall be actual knowledge of the forfeiture, or of the existence of the cause producing a forfeiture, before there can be a waiver, will not be insisted on. *Baltimore L. Ins. Co.* v. *Howard,* 95 Md. 258. Thus in the case of *Supreme Lodge K. of P.* v. *Kalinski,* 163 U. S. 289, it appeared that Kalinski had been in default in paying his lodge dues though he regularly paid his assessments on his benefit certificate. Under the laws of the order his delinquency in paying his lodge dues forfeited his insurance under the benefit certificate. After his death his beneficiary sued upon the certificate, and the suit was defended on the ground that his failure to pay his lodge dues forfeited his insurance under the benefit certificate. It was answered

412

that by the receipt of his assessments the forfeiture was waived. In reply to this it was contended that the grand lodge had accepted the assessments—which is merely another term for premiums—without knowing that Kalinski was in default to the local lodge for dues, and that being ignorant of the default, it could not be held to have waived it. The Supreme Court of the United States, speaking by Mr. Justice Brown, said in dealing with that feature of the case: 'Granting that the continued receipt of premiums or assessments after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company (*New York L. Ins. Co.* v. *Davis,* 95 U. S. 427; *Bennecke* v. *Connecticut Mut. L. Ins. Co.,* 105 U. S. 355), this is true only of such facts as are peculiarly within the knowledge of the assured. If the company ought to have known of the facts, *or with proper attention to its own business would have been apprised of them, it has no right to set up its ignorance as an excuse.'* In *Tobin* v. *Western Mut. Aid Soc.,* 72 Iowa 261, it was held that the defendant had waived a forfeiture for nonpayment of assessments by receiving and retaining subsequent annual dues, though ignorant of the grounds of forfeiture. The court said: 'The fact that the company, in receiving and retaining the money did not know of the previous grounds of forfeiture, or intent to waive the same is not material. . . . By the exercise of the slightest diligence the defendant could have ascertained the alleged failure of Mrs. Tobin to pay assessments, and, by the return of the money collected during the months intervening before her death, prevented her from being lulled into security by the misleading acts of the company.'

"It will not do to say that in order to avoid expense the company's books were kept in such a manner as not

to disclose the names of the assured, and therefore, that it could not know, when the second policy was issued, that there was a prior one of its own, outstanding on the same life. If the company, to serve its own purposes, saw fit to adopt an imperfect or incomplete system of recording its policies, whereby its books failed to show what, if prudently and methodically kept, they would have revealed with respect to the names of the insured, it certainly should not be permitted to set up its own ignorance, resulting from its own negligence, as a valid reason for the nonapplication of the doctrine of waiver. It cannot be doubted that the company ought to have known the names of the persons upon whose lives it carried risks; and it is obvious that a proper attention to its business would have apprised its officers of those names, and consequently it has no right to set up its voluntary and censurable ignorance of those names as an excuse for not knowing that a prior policy had been issued by it on the life of Mary J. Marion. It ought to have known that it had issued the first policy, and it will not be heard to say that it did not know that fact, merely because it kept its records in such an imperfect way that they did not contain the names of the insured. It must be treated as knowing what it ought to have known. It did issue the first policy and it was in force when the second was written; and the company knew that fact, because it was bound to know it, whether its books revealed it or not.

"Waiver by the acceptance of a premium is not based upon contract, but on estoppel of the company to insist on conditions of the policy inconsistent with the acceptance or retention of the premium. With the first policy outstanding, and without an endorsement thereon of an authorization for the issuance of a second one on the same life, the insurer being chargeable with the knowledge of those facts because it was bound to know them,

it accepted forty-one premiums from the beneficiary named in the second policy, and that acceptance estops the company to insist on the (forfeiture clause above quoted) to vacate the later policy, because the act of accepting and retaining the premiums on the second policy was wholly inconsistent with the terms of that condition or restriction." *Monahan* v. *Mutual L. I. Co., supra* (p. 158).

The tender by the insurer to the beneficiary here, after the death of the insured, of the amount of the premiums paid cannot relieve the appellant from its liability under the policy sued on. See also *National Life and Acc. Co.* v. *Jackson* (1922), 18 Ala. App. 347, 349, 92 So. 201, which was a case construing a clause very similar to the one in question and wherein the result reached was the same as we are attaining here. An apt quotation from the case is: "Corporations can only act through agencies, and likewise they receive notice and knowledge through agents acting within the scope of their authority, and a collecting agent, while collecting money for his principal upon outstanding contracts, must report to his principal information regarding such contracts coming to his knowledge while he is engaged in the business of collecting, *within the scope of his agency."*

Here the knowledge of the agent in Evansville that these policies had been issued by the company was sufficient notice to it to put it upon inquiry and the company had better means of ascertaining whether or not the policies were still in force than did the insured.

The appellant cites the case of *Kizer* v. *Life & Cas. Ins. Co.* (1936), 169 Tenn. 605, 90 S. W. (2d) 513, wherein the court reviewed practically all the cases construing similar clauses but arrived at a different result because in that case the policy specifically provided that

the failure to comply with the condition would not cause a forfeiture but would create an alternative obligation which was to return the premiums. The same is true of the case of *Pisker* v. *Metropolitan L. Ins. Co.* (1935), 115 N. J. L. 582, 181 Atl. 31. It will be noted that in the instant case there was no such alternative obligation.

The trial court did not err in sustaining the demurrer of the appellee to the third paragraph of appellant's answer to the amended first paragraph of complaint and the judgment of the Gibson Circuit Court is in all things affirmed.