UNITED STATES FIRE INSURANCE CO. *v.* Mr. and Mrs. Wilson MONTGOMERY et al

74-76                                   511 S.W. 2d 659

Opinion delivered July 22, 1974

*Barber, McCaskill, Amsler & Jones*, for appellant.

*James C. Cole, McMillan & McMillan* by: *H. W. McMillan, F. Hugh Lookadoo*, for appellees.

JOHN A. FOGLEMAN, Justice. This is an appeal from a judgment of the Circuit Court of Hot Spring County in favor of appellees Mr. and Mrs. Wilson Montgomery in the amount of $7,000, plus interest, penalty and attorney's fees as provided by Ark. Stat. Ann. 66-3238 (Repl. 1966), based on a fire insurance policy issued by appellant covering a tenant dwelling owned by the Montgomerys. Appellant contends the trial court erred in holding the policy to be in full force and effect on the date of the loss since it asserts the policy had been cancelled. It also alleges the trial court's finding that the two third-party defendants, Broyles Insurance Agency and Stone-Lookadoo Insurance Agency were free of any liability to it was erroneous. We affirm the judgment of the trial court.

In order to treat appellant's contentions it is necessary to closely examine the factual background. Prior to May 15, 1969, the Montgomerys had purchased a $4,000 fire insurance policy issued by appellant from the Stone-Lookadoo Insurance Agency. On that date they renewed the policy for

an additional three-year period. On May 28, 1969 appellant informed the Stone-Lookadoo Agency that unless the coverage on the dwelling was increased to $7,000 it would cancel the policy.

Thomas Gunnin, an underwriter for appellant, testified that on June 10, 1969 he wrote a letter, a copy of which was introduced into evidence, to Stone-Lookadoo in which he stated that since no endorsement increasing coverage had been received the company must ask that the policy be cancelled. His letter further offered to assist Stone-Lookadoo by mailing direct notice of cancellation to the policy holders if no contrary instructions were received from Stone-Lookadoo within the next ten days. Gunnin said he mailed separate notices of cancellation to Mr. Montgomery, Mrs. Montgomery and the Stone-Lookadoo agency. Copies of these notices, certificates of mailing dated July 16, 1969 and copies of two credit "memos" showing a pro rata premium refund on the original $4,000 coverage and a full premium refund on the attempted endorsement were introduced into evidence. According to Gunnin, the cancellation was effective on July 10, 1969. The refunds went to the agency.

Mrs. Montgomery testified she contacted the Stone-Lookadoo Agency and asked for coverage on the tenant dwelling. She stated she did not specify any particular company but that the agency picked the company with which to place the coverage. According to Mrs. Montgomery all premium payments were made by checks payable to the Stone-Lookadoo agency and, after it bought out Stone-Lookadoo, to the Broyles agency. She said she was never notified by United States Fire Insurance, Stone-Lookadoo or Broyles that the United States Fire Insurance Company policy had been cancelled and had never been informed that any other insurance policy had been written covering the house.

Jerry Karber, agency manager for Stone-Lookadoo in June and July of 1969, said he issued the increased coverage endorsement that appellant requested but then received a letter from United indicating that the policy had been cancelled. It apparently had crossed the endorsement in the mails. It was admitted by Gunnin that the endorsement was

received in the company's Little Rock office on July 17. According to Karber, he felt it would be easier to issue a new policy in another company than attempt to reinstate the United States Fire policy and so without notifying the Montgomerys he placed the coverage with National Investors Fire and Casualty. No one ever explained what happened to this policy after the agency was sold to Broyles.

In November of 1969 the Stone-Lookadoo agency was purchased by the Broyles agency. Joe Jarrett, accounting manager for appellant, testifying from company records, stated that in July of 1970 United States Fire Insurance received a statement from the Broyles agency which included an $81.00 premium payment on the Montgomery policy. Jarrett said the Broyles agency was informed on September 25, 1970, and again on December 8, 1970 the policy had been cancelled and that it would be credited with the return premium. He said that upon receiving the November, 1970 statement from Broyles which reflected a balance of $1,-113.48 due to United States Fire Insurance, the company prepared a supplementary accounting crediting Broyles with $411.70 for return of premiums on cancelled policies including the Montgomery policy. He said the accounting, a copy of which was introduced into evidence was sent to Broyles. According to his testimony, in January Broyles sent United States Fire a check for $701.78, that being the difference between the original statement less the credited premiums. According to Jarrett's testimony the May, 1971 payment from Broyles also included a premium payment on the Montgomery policy. He said that on September 21, 1971, the agency was once more informed the policy had been cancelled and that a credit should be taken for that amount on its next statement. They were again informed of the cancellation on December 10, 1971. Jarrett testified that since no credit was taken by Broyles, in April of 1972 the company finally sent its check for the return premium to the agency. That check was still outstanding at the time of the trial.

The Montgomery house was destroyed by fire on January 13, 1972 and the Montgomerys made a demand on United States Fire Insurance for payment under the policy. The company denied liability on the grounds that the policy had been cancelled.

Notice of cancellation of an insurance policy is not effective unless communicated to the insured. *Commercial Union Fire Insurance Company* v. *King*, 108 Ark. 130, 156 S.W. 445; *Merrimack Mutual Fire Insurance Co.* v. *Scott*, 219 Ark. 159, 240 S.W. 2d 666. The trial court made a factual determination that the Montgomerys never received notice of cancellation. Appellant contends the dual agency rule as set forth in cases such as *Allemania Fire Insurance Co.* v. *Zweng, Trustee*, 127 Ark. 141, 191 S.W. 903; *Insurance Underwriters' Agency* v. *Pride*, 173 Ark. 1016, 294 S.W. 19 and *Firemen's Insurance Co.* v. *Simmons*, 180 Ark. 500, 22 S.W. 2d 45 requires a finding that the insurance agencies were the agents of the Montgomerys for receipt of notice of cancellation or, in the alternative, that it have judgment over against Stone-Lookadoo and Broyles, alleging their actions in not cancelling the policy and returning the premiums to the insured were negligent and the proximate cause of appellant's loss.

We have long recognized that the requirement of notification to the insured is for his benefit and may be waived by him and that the agent of the company may also be the agent of the insured to accept notice of cancellation. *Insurance Underwriter's Agency* v. *Pride*, supra; *Firemen's Insurance Co.* v. *Simmons*, supra. The rule is applied in cases where the court has found that an agreement existed between the insured and the agent that the agent would keep the property insured without specifying a particular company with which the coverage was to be placed. Such an agreement may be express or, as is more often the case, implied from circumstances such as where the agent renews the policy on expiration and accepts notice of cancellation and issues replacement policies without notifying the insured. *Insurance Underwriter's Agency* v. *Pride*, supra; *Firemen's Insurance Co.* v. *Simmons*, supra.

Although appellant makes a strong argument that such an agreement existed between the Montgomerys and the insurance agencies we do not have to decide whether it did in fact exist. Appellant undertook to provide direct notice of cancellation and relieved Stone-Lookadoo of any responsibility. Thus, there was a question of fact as to whether the company, by its own action, deprived the insured of notice which the agent might otherwise have provided. The dual agency

concept assumes notice to the agent is notice to the insured because an agent is under a duty to keep his principal apprised of all facts and circumstances that may be important to the principal's interest. *Denton's Ex'rs. v. Embury & Young,* 10 Ark. 228. In his testimony Gunnin admitted that after the company mailed direct notice of cancellation to the insured it did not look to Stone-Lookadoo or Broyles to do anything in connection with the cancellation. The trial judge, in his written findings of fact, determined the proximate cause of the policy being in force on the date of the fire was the ineffectiveness of appellant's attempted cancellation. We cannot say this finding lacks substantial evidentiary support. It is clear from the record that appellant relied solely on the cancellation notice purportedly given by Gunnin to Mr. and Mrs. Wilson Montgomery and the idea of notice through the insurance agency was an afterthought.

These same facts provide ample evidentiary support for the trial court's finding that Stone-Lookadoo had no liability to appellant. Having been informed that direct notice of cancellation would be sent, Stone-Lookadoo was clearly relieved of any duty that it might have had to appellant to provide the insured with notification of cancellation. As a matter of fact, there is no evidence that Stone-Lookadoo disregarded any instruction given it by United. An agent certainly should be able to rely on his principal's instruction that no action is expected of him in a matter in which he ordinarily would be under a duty to act and to be free of any liability to the principal who, having attempted to handle the matter directly and failing, seeks to reassert the agent's duty. There is no evidence that Stone-Lookado accepted any further premium payment on the policy.

The Broyles agency contends it is relieved of liability to appellant under an estoppel theory because appellant retained the premiums which Broyles erroneously collected and forwarded to the company. For authority appellee Broyles cites us to *National Life & Accident Insurance Co. v. House,* 104 Ind. App. 403, 9 N.E. 2d 133. In that case the insurance company, without questioning in any way the policy on which the premiums were paid, collected weekly premiums until the death of the insured seventeen weeks later. Only then did the

company seek to avoid liability and to return the premiums alleging that a policy clause had been violated. The Indiana court held that retention of the premium payments constituted an estoppel. We find that case to be clearly distinguishable from this one.

It was admitted that Broyles continued to bill the Montgomerys for the premium on the policy. The evidence indicated the Broyles agency took credit for the 1970 premium in its January, 1971 check to United States Fire Insurance. Thus this payment was not retained by the company. After receiving the May, 1971 payment appellant notified Broyles that since the policy was no longer in force the premium should be taken as a credit in its next account. A similar notice was sent in December but Broyles never applied the credit and in April of 1972, after the loss had occurred, a check was sent to the agency. Estoppel can arise due to the acts or inaction of a party, but it does not exist unless the adverse party has in good faith relied upon the act or inaction. *Hendrix* v. *Hendrix*, 256 Ark. 289, 506 S.W. 2d 848 (1974); *Bowlin* v. *Keifer*, 246 Ark. 693, 440 S.W. 2d 232. In view of all the dealings between Broyles and appellant, Broyles cannot in good faith assert that it believed the policy to be in force because appellant retained the premium payments. No explanation of Broyles' actions was ever given.

An agent is liable to his principal for negligence in the handling of the principal's business entrusted to him, or for an omission or neglect to perform a duty on his part with reference thereto, if the principal suffers a loss by reason thereof. *Houston Rice Co.* v. *Reeves*, 179 Ark. 700, 17 S.W. 2d 884; *Emerson* v. *Turner*, 95 Ark. 597, 130 S.W. 538. See Restatement of the Law, 2d, Agency, 187, 237, Secs. 383, 401. Mrs. Montgomery testified that she handled the payment of premiums on this insurance.When she went to the Broyles agency in 1971 to make payment, a Mrs. Epperson at the agency made out the checks and made notations thereon as to the items paid. Mrs. Montgomery simply signed the checks.

Even if it be said that Broyles breached its duty to United it was necessary that United show that its loss was occasioned by the default or negligence of Broyles. See *Emerson*

*v. Turner,* supra. The fact that Broyles remitted premiums for two years after the alleged cancellation was substantial evidence that should have put United on notice that something had gone awry in connection with the cancellation, for which it took sole resonsibility. Still, it did nothing to give the Montgomerys further notice or to direct the Broyles Agency to do so. We cannot say that there was no substantial evidence that the loss was attributable to appellant's actions and not to Broyles's breach in the matter.

The judgment is affirmed.