**Linda Jones SISK, Plaintiff-Appellee,**

v.

**VALLEY FORGE INSURANCE COMPANY, a Subsidiary of CNA Insurance Group, and Corroon & Black, Defendants-Appellants.**

**VALLEY FORGE INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant,**

v.

**Daniel SPEER, d/b/a Speer Insurance Agency, Third-Party Defendant-Appellee.**

No. 81–395–II.

Court of Appeals of Tennessee, Middle Section.

July 8, 1982.

Permission to Appeal Denied by Supreme Court Sept. 27, 1982.

John E. Brandon, Watkins, McGugin, McNeilly & Rowan, Nashville, for Valley Forge Ins. Co.

Jack B. Henry, Henry & Henry, Pulaski, for Corroon & Black.

W.H. Forrester, Wade, Forrester, Hays & Wallace, Pulaski, for Linda Jones Sisk.

Stephen F. Speer, Cheatham & Speer, Pulaski, for Daniel Speer, d/b/a Speer Ins. Agency.

OPINION

CONNER, Judge.

This is a many faceted automobile insurance cancellation case.

On March 10, 1981, Linda Jones [Sisk], the plaintiff-appellee[1] (Jones), made application through Daniel Speer, d/b/a Speer Insurance Agency (Speer), for insurance coverage against loss or collision to a 1980 Chevette. The application was originally made in the name of Linda Jones Attkinson and Milton Attkinson. A policy was subsequently issued which provided coverage from March 10, 1980, to March 10, 1981. General Motors Acceptance Corporation (GMAC) was listed as the loss payee under the insurance contract. The agreement, which was underwritten by defendant, Valley Forge Insurance Company (Valley Forge), a subsidiary of the CNA Insurance Group (CNA), covered the Chevette and any additionally acquired private passenger automobile. Mr. Speer had obtained the coverage for the insured through the office of Corroon & Black of Nashville, Tennessee, though Corroon & Black received its commission directly from Valley Forge. There were never any direct dealings between the insured and Corroon & Black.

The total annual premium was $219.00 and was to be satisfied by quarterly payments of $54.75. The first installment was made on March 14, 1980, by the plaintiff directly to Mr. Speer. She understood at that time that this initial amount purchased insurance for only one quarter and that additional premiums would come due at subsequent ninety-day intervals.

Thereafter, on May 30, 1980, Mrs. Jones traded the Chevette for a 1980 Monte Carlo. She immediately informed her agent of this transaction in order that coverage might be obtained on the Monte Carlo and the Chevette deleted. She further notified the agent that she had divorced Mr. Attkinson and had changed her name back to Linda Jones and wanted the insurance to so re-

ated.

---

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbrevi-

flect. She specifically asked Mr. Speer if she should then make any premium payment and he responded that she would be billed. Mr. Speer testified that he wrote an endorsement request to the existing insurance agreement, both as to the named insured and vehicle insured, and forwarded the information to defendant Corroon & Black, the agent's broker.

Plaintiff then received at least one copy of an endorsement some time after May 30, 1980, according to her. This document which we will discuss in greater detail hereafter did reflect the name change, but did not reflect her acquisition of the Monte Carlo. However, Mrs. Jones did not originally notice that the amended declarations of the endorsement failed to list the Monte Carlo, but only took note that the revised premium remained at $219.00. Mrs. Jones testified she contacted Mr. Speer after receipt of this endorsement and once more asked him whether she should pay a premium and again he notified her that she would be billed. According to Mrs. Jones she never received a bill for any additional premium from anyone and no representative of Valley Forge, Corroon & Black or Mr. Speer was able to produce any evidence to the contrary. Thereafter, plaintiff made no further premium payments for her insurance coverage.

On July 2, 1980, some twenty-three days after the due date of the next quarterly premium payment, Valley Forge purportedly mailed to Mrs. Jones, at her address listed on the insurance contract, a notice of cancellation based on her failure to make payment of premiums. It stated:

| | |
|---|---|
| CNA | PLEASE RETURN THIS NOTICE WITH PAYMENT |
| Cancellation Notice | IMPORTANT. Your policy will be *reinstated with no loss of protection* if your |
| Because your payment is past due your insurance identified below is cancelled. Date protection will stop as shown below. | payment is received at our office before the date shown below. A notice of reinstatement will be sent upon receipt of payment. If you have any questions regarding this notice please contact your agent or service representative. |

The document showed July 14, 1980, as the date when her coverage would terminate.

On August 10, 1980, the Monte Carlo was stolen and burned. On the following Monday Mrs. Jones telephoned Mr. Speer and inquired about her insurance coverage. She denied ever receiving a notice of cancellation, as did GMAC, the loss payee. Mr. Speer informed her that the policy had been cancelled. Subsequent to this conversation plaintiff tendered her quarterly premium to Valley Forge which was promptly refunded to her with reliance by the insurer on the cancellation for nonpayment.

Mrs. Jones then filed this action against Valley Forge and Corroon & Black for negligence and breach of insurance contract. Plaintiff sought actual damages of $7,500.00 plus the statutory bad faith penalty pursuant to T.C.A. § 56–7–105.[2] Valley Forge then filed a third-party complaint against Mr. Speer seeking indemnity for any liability imposed upon it. However, all defendants contended that there had been a valid cancellation of the policy.

The third-party complaint was subsequently dismissed. However, a joint and several judgment was entered against Valley Forge and Corroon & Black for

2. *Additional liability upon insurers and bonding companies for bad-faith failure to pay promptly.*—(a) The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy or fidelity bond on which said loss occurred, shall be liable to pay the holder of said policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for said loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy or fidelity bond; and, provided, further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury thus entailed.

.     .     .     .     .

$7,500.00 plus a 25% penalty after a bench trial. In finding liability the trial judge stated:

.     .     .     .     .

I have decided this case in favor of the plaintiff and against the two defendants [Valley Forge and Corroon & Black], allowing the amount of the fair market value of the automobile at the time it was stolen. I believe the proof showed about Seven Thousand, Five Hundred ($7,500.00) Dollars?"

HOWELL FORRESTER: "Yes sir."

JUDGE: "Plus twenty-five (25%) percent penalty for these reasons:

1. That these parties are liable to the plaintiff for breach of contract in not supplying and furnishing to the plaintiff, insurance coverage, by means of insurance policy or an endorsement on the original policy, issued by them on the Chevette automobile, that is to say that failure of these defendants to issue a policy or an endorsement covering the second automobile, the Monte Carlo. The affiliate agent, Mr. Speer, had notice that this automobile, the Monte Carlo, had been purchased, that it was to take the place of the Chevette. He had notice of that. Notwithstanding that notice, no change or endorsement or new policy was ever issued by these defendants insuring the Monte Carlo. This is true notwithstanding the fact that a premium had been paid for the quarter starting March the 10th and running through June the 10th. Is that 1980?"

HOWELL FORRESTER: "Yes sir."

JUDGE: "1980. Under the law, notice to an affiliate agent or affiliate broker constitutes notice to the agent or broker and therefore, notice to the agent constitutes notice to the insurance company in this case. Not only did the breach of contract occur in the way that I have indicated, also Mr. Speer's testimony acknowledges that coverage would or should have been given. He made this acknowledgement to the Johnson Motor Company, also to the plaintiff. He also assured the plaintiff that she would be given a notice if and when a premium was due. So therefore, I am finding that the two defendants are liable for a breach of contract."

.     .     .     .     .

Item 2. I am holding these two defendants liable, let me back up just a minute on that, I don't think I have said this, but if I have you can strike it. Liability on this type of contract may sound actually in tort because due to the circumstance, liability is predicated upon the negligence of the affiliate agent and agents. If it does sound in tort, it would be based upon the negligence of the affiliate agent and agents in not seeing that this Monte Carlo automobile was actually insured by either having an endorsement or issuing a new policy, that is, an endorsement on the original policy effecting the Chevette automobile. If it does sound in tort, the Court will find that there would be joint and several liability as to these two defendants. We are going back again, the agent is liable for the negligence of the affiliate agent, and the insurance company would be liable for the negligence of the agent, Corroon & Black, and throughout this entire transaction, they have held Corroon & Black out as their agent.

Secondly, the Court finds liability in the case in favor of the plaintiff on the theory of estoppel. The Court finds that these two defendants by their actions and conduct in this matter are estopped to deny insurance coverage on the Monte Carlo automobile in this case. Notwithstanding the fact that no insurance policy was ever issued or an endorsement changing the automobile onto this policy. Some of these items of estoppel would be that the statement of the affiliate agent to Johnson Motor Company and the plaintiff, that this automobile, the Monte Carlo, was covered by insurance. 'We will send you a bill for the premium,' I'm further finding neither Mr. Speer nor Corroon & Black or the insurance company ever sent this lady any notice of premium due prior to the date that the pre-

mium should have been paid. No notice was ever given. Another item of estoppel is that the defendants, by their pleadings in this case, rely upon complying with the statute about giving 10 days notice by mail. You can't rely upon a statute with reference to an insurance policy, when in fact, no insurance policy or endorsement was ever issued. You can't call it insurance in one breath under a statute and deny coverage on the other. In other words, you are estopped by that conduct. There are some other items of estoppel too I'll mention in a moment.

Going back to notice, it is in the record that it apparently was postmarked, placed in the mail, apparently trying to establish a notice. That is Exhibit # 16. Apparently, a notice was mailed of cancellation on the policy to be cancelled on July 14. That notice, so called notice, if and when it was mailed, does not mention the Monte Carlo automobile, it only mentions the policy number that had been issued to the Chevette. The Court finds that that is not enough notice of any cancellation in compliance with the statute. Further reference to that so called notice by mail, the Court makes a finding that that notice was never received by the plaintiff, Mrs. Jones, Linda Jones; it was never received by GMAC. Certainly, being knowledgable about these matters, if GMAC had received notice that it would have seen that coverage was placed on this automobile.

*       *       *       *       *

Item # 3. In the event the Court is in error about these facts and conclusions, if by some stretch of the imagination some Appellant (sic) Court should find that, in fact, there was insurance policy, for some reason, the Court still finds that, the Plaintiff is entitled to recover in this case.

The statute, about cancellation, 56–7–1303;

'No notice of cancellation of a policy shall be effective unless mailed or delivered by the insured, its authorized agent or employee, to the named insured as shown in the policy declaration at the address shown in such declaration, stating—less than ten (10) days.'

That statute was not complied with because they did not give any policy number or endorsement insuring the automobile in question, the Monte Carlo and even if by some stretch of the imagination that you could possibly find that they did, these defendants were estopped by the assurances of the affiliate agent that she would be notified if and when an additional premium was due, which was not done. Another thing too, as it happens there is confusion because Mrs. Jones knew that she did not own any Chevette automobile, and any notice of cancellation of the policy, the insurance would have to be on the last car, the second car, the Monte Carlo.

*       *       *       *       *

Valley Forge and Corroon & Black appeal.

Valley Forge and Corroon & Black principally contend there was a valid cancellation of insurance coverage prior to the loss. They further assert that "the issue of precancellation insurance coverage of the plaintiff's 1980 Monte Carlo" was never raised. They say in any event there is no basis for the award of the statutory bad faith penalty.

Corroon & Black additionally questions the failure of the trial court to sustain its motion to dismiss contending the complaint failed to state a cause of action against it.

Lastly, Valley Forge asserts that in the event it is liable to plaintiff, the trial court erred in dismissing its third-party complaint against Mr. Speer.

In our judgment the critical document in this transaction is the endorsement purportedly revising the coverage to plaintiff. To say that there was confusion involved in the transaction is an understatement. Any reasonable reading of this record reveals the following: that both plaintiff and a representative of the seller of the automobile confirmed with Mr. Speer on or about May 30, 1980, that coverage existed on the Monte Carlo. At that time Mrs. Jones spe-

cifically asked Mr. Speer if any premium was due. Sometime after June 11, 1980, a first defective endorsement was sent to the plaintiff which contained numerous defects and language which was misleading to her. By Mr. Speer's own admission the rider did not do what it was intended to do, to wit: insure the new car. The endorsement has the following language: "premium waived, revised total $219.00." The coverage as indicated thereon was from May 29, 1980, until June 10, 1981. The premium as there reflected was precisely the same as initially shown for coverage of the Chevette from March 10, 1981. Beyond this the blocks on the endorsement which show due date and premium were blank. Assuming *arguendo* that plaintiff was going to make a premium payment based upon the endorsement, would she have paid one-fourth of $219.00 or one-third? In response to a question in this regard she said: "How can you pay something if you don't know how much it is?"

The endorsement dated June 11, 1980, had an incorrect zip code for the loss payee, GMAC. It continued to improperly reflect the plaintiff's name as Linda Jones Attkinson as named driver; and, of course, the rider showed the Chevette rather than the Monte Carlo as the insured vehicle. Though it was not emphasized at trial, our examination of this record reveals that there was apparently another abortive effort by someone to correct the deficiencies in the endorsement. Exhibit 9 in the record purports to be yet a second endorsement dated June 24, 1980, which would be some two weeks after the supposed premium due date and the date of the first incorrect rider. However, it contains all of the deficiencies of the previous endorsement except under the named driver portion the word "Attkinson" is deleted from plaintiff's name.

The plaintiff's complaint alleged that:

Plaintiff will show that on May 30, 1980 she purchased from Johnson Chevrolet a 1980 Monte Carlo at which time she notified the defendants that the new car had been purchased and that she no longer owned the 1980 Chevrolet Chevette and that your defendants had notice of this but they failed to correct their records accordingly.

■ The record reveals without question this to be the case. The contention that plaintiff neither plead nor proved the failure to amend coverage as to the changed vehicle is without merit.

The uncontradicted testimony of the plaintiff is that when she received an endorsement (the record is again unclear as to whether she received one or both) she called Mr. Speer, her agent and the only person with whom she had ever dealt in the matter, and asked if she should pay a premium. The evidence is again uncontroverted that his answer was no, that she would be billed.

■ She testified and the trial court found that at no point did she ever receive from any representative of the insurer a notice of premium due. The findings of fact of the trial judge involving the credibility of witnesses are entitled to great weight on appeal. *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959). This is because the trial court alone has the opportunity to observe the appearance and demeanor of the witnesses. *Capital City Bank v. Baker,* 59 Tenn.App. 477, 442 S.W.2d 259 (1969).

■ Beyond all this there is considerable question as to the validity of the cancellation notice. First and foremost, that notice, even if received, could reasonably be construed by the insured to be directed to the Chevrolet Chevette as there is no indication that the insurer ever properly changed "insured vehicles" as specifically requested to do and as Mr. Speer indicated to plaintiff had been done. Secondly, the mailing log displaying the notice of cancellation, which was hearsay as to which no objection was made, bore the date of June 30, 1980, with the mailing date shown as July 2, 1980.

There was no explanation for the difference. A representative of GMAC testified without equivocation that no notice of cancellation had ever been received by GMAC. According to the proof, had such notice been received, GMAC would have immediately notified the plaintiff of such cancellation, and had she refused to pay the premium, would have immediately obtained single interest insurance for itself. The plaintiff herself testified without equivocation that she never received a notice of cancellation and the trial court so found. The company notified the plaintiff under date of August 16, 1980, that the policy had been cancelled June 15, 1980, which certainly does not correlate to a June 10, 1980, billing date, the purported June 30 cancellation letter or the purported July 2, 1980, mailing. To cap the confusion and mismanagement in the whole affair upon returning Mrs. Jones' allegedly late premium payment Valley Forge remitted to her only $51.24 when she had made a premium payment of $54.75.

Finally, the record indicates that Corroon & Black did indeed receive notice of the purported cancellation from Valley Forge on July 7, 1980, and apparently copied Mr. Speer with that notice on July 8, 1980. Yet, this record is devoid of any evidence that Mr. Speer ever took any steps to notify either the plaintiff or her mother, both of whose whereabouts were well known to him, of the attempted cancellation.

Of course, under Tennessee law Mr. Speer is the agent of Valley Forge, the insurer. T.C.A. § 56–6–124 provides as follows:

> *Agent is representative of insurer.* —Every agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or his beneficiary and the insurer be regarded as the agent of the insurer and not the insured or his benefi-

ciary. This provision shall not affect the apparent authority of an agent.

Accordingly, we believe the trial court was correct in finding liability as to Valley Forge.

■ Likewise, we believe the trial court was correct in dismissing the third-party complaint for indemnity of the insurer against Mr. Speer. The only possible theories of liability as to Mr. Speer would be for failure to deliver the correct information so as to cause the proper endorsement to issue from the insurer and/or the failure to notify plaintiff of the pending cancellation. From this record it is impossible to tell at what point in the process the mistakes were made regarding the faulty endorsements. The errors could have emanated from Mr. Speer's failure to properly bring this information to the attention of Corroon & Black or up the line to and through Valley Forge. However, Mr. Speer did testify that he furnished the necessary data to the insurer through Corroon & Black so as to obtain the corrected coverage. In denying liability as to Mr. Speer the trial judge obviously believed that this was done. This finding of fact is entitled to great weight. *See Town of Alamo v. Forcum-James Co., supra,* and *Capital City Bank v. Baker, supra.*

■ We do not think this record reflects that Mr. Speer violated any duty owed to the insurance company by failing to notify the insured of the cancellation, assuming *arguendo* he became aware of it through notice from Corroon & Black. In general, it is a prerequisite to an agent's liability for failure to notify the insured of the cancellation that he has had properly assigned to him, or has undertaken, the duty of cancellation. B. Harnett, *Responsibilities of Insurance Agents and Brokers* § 4.02 (6th ed.1981). An insurer cannot hold an agent liable for failure to notify the insured of the insurer's attempted cancellation if by express contract, legal provision or actual practice the insurer must directly cancel. *Ibid.* Clearly, it was Valley Forge's practice to notify the insured di-

rectly about cancellation. If, by its practice, an insurer does not expect the agent to notify the insured, the agent will not be liable. *United States Fire Insurance Co. v. Montgomery*, 256 Ark. 1047, 511 S.W.2d 659 (1974).

In this case we must remember that Mr. Speer was one step removed from Valley Forge and did not deal with it directly. His contact was with Corroon & Black, the broker. There is nothing in the record to indicate that Mr. Speer ever agreed to give notice of cancellation or had that duty assigned to him. There is no proof in the record of a custom or usage of trade that the agent handled the notice of cancellation for the insurer.

When Mr. Speer got a copy of the notice of cancellation (assuming again that he did), it is certainly arguable that it was entirely proper for him to believe that the insured had received the notice in due course and would take whatever action she thought necessary. He would likely assume that the insured had received the notice just as he had. Under those circumstances we do not think his actions were unreasonable.

In addition, we fail to see any material loss suffered by the insurance company from the failure of Mr. Speer to notify the insured of the cancellation. Had the insured gotten a notice in all likelihood she would have paid the very modest premium, coverage would have been reinstated, and when the loss occurred, the insurance company would have been entirely liable therefor. The company would have been in exactly the same position.

We do not think this is a proper case for indemnity.

■ As between Valley Forge, Corroon & Black and Mr. Speer, Corroon & Black might well have an obligation of indemnification if it failed to pass along to Valley Forge the necessary information to properly correct the policy. However, only the plaintiff sued Corroon & Black and we find no basis for liability of Corroon & Black to the plaintiff. There were no dealings between any representative of Corroon & Black and the plaintiff and no contract of insurance between them. This record merely discloses that Corroon & Black brokered plaintiff's insurance with Valley Forge at Mr. Speer's request—not that of the plaintiff. The only basis of liability as to Corroon & Black would be for improper administration of the policy matters as between Valley Forge and Mr. Speer, its affiliate agent. But Corroon & Black was sued by neither and the proof is very unclear as to where fault lies in this respect. Therefore, there is no basis for recovery against Corroon & Black herein.

The defendant Valley Forge contends that the award of a bad faith penalty was in error and we agree. In assessing the penalty the trial court found as follows:

This lady has lost her automobile. So far, she lost the equity when she bought it, she has lost the payments that she has made, and by the way, she had made these payments on time according to the record, she lost the interest on her investment, she has had to bring suit and the Court takes judicial knowledge that that entails cost, attorneys fees, et cetera, depositions, and in addition to that, in this case she has entailed tremendous expense by reason of this contract with General Motors Acceptance Corporation, plus additional interest, carrying charges, service charges, and on top of that the attorneys fee, the lawyer for General Motor Acceptance Corporation, between eight hundred ($800.00) and Nine hundred ($900.00) Dollars, and will probably have future attorneys fees. No doubt this case may go to some Appellant (sic) Court, maybe it should go to some Appellant (sic) Court. Those are the things that bearing in mind, in fixing the penalty, the Court allows the maximum of twenty-five (25%) penalty.

■ One of the factors cited by the trial judge as justifying the imposition of the statutory penalty was the "attorneys fees"

incurred by Mrs. Jones. It has been expressly held in this state that:

> "... the incurring of the expense of an Attorney is not a factor to be considered in determining whether the refusal to pay was in 'bad faith.' ..."

*Polk v. Cumberland Life Insurance Co. of Tennessee,* 61 Tenn.App. 10, 24, 452 S.W.2d 868, 874 (1969).

> ... The burden of proving bad faith of an insurance company is on the plaintiff.... The bad faith penalty is not recoverable in every refusal of an insurance company to pay a loss. *An insurance company is entitled to · rely upon available defenses and refuse payment if there is substantial legal grounds that the policy does not afford coverage for the alleged loss. If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the (sic) imposing of the bad faith penalty.* (Citations omitted.) (Emphasis supplied.)

*Nelms v. Tennessee Farmers Mutual Insurance Company,* 613 S.W.2d 481, 484 (Tenn. App.1978).

Though the defense of cancellation was not sustained, in our view there was certainly a legitimate factual basis for raising the question. The justification for the bad faith award by the trial court was not based upon the misconduct of the insurer as required by T.C.A. § 56–7–105, *supra.* Rather it was bottomed upon the various economic burdens to plaintiff in seeking compensation. There were substantial legal grounds, though not sustained, for the insurer to defend herein. Therefore, we believe the finding of bad faith must be overturned.

Accordingly, the award of $7,500.00 actual damages against the defendant Valley Forge is affirmed. The dismissal of the third-party complaint of Valley Forge against Mr. Speer is likewise affirmed. The complaint against the defendant Corroon & Black is dismissed. The bad faith award pursuant to T.C.A. § 56–7–105 is set aside.

The costs are taxed to the defendant Valley Forge and this cause is remanded.

AFFIRMED IN PART, REVERSED IN PART, MODIFIED AND REMANDED.

TODD, P.J. (M.S.), and CANTRELL, J., concur.