IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2012 Session

## STONEBRIDGE LIFE INSURANCE COMPANY, GWENDOLYN R. WILLIAMS v. ONZIE O. HORNE, III

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH111026      Arnold B. Goldin, Chancellor**

**No. W2012-00515-COA-R3-CV - Filed November 21, 2012**

This is an interpleader action resulting from competing claims to the proceeds of a life insurance policy. The trial court granted summary judgment to the Insured's mother, finding that, because she was the only named beneficiary of the policy, she was entitled to the proceeds. Insured's husband appeals, arguing that, because Insured's mother was only named as a contingent beneficiary, the default provisions of the policy remained in effect, resulting in him being the primary beneficiary of the policy. Husband also appeals the trial court's dismissal of his bad faith claim against the insurer. We affirm the dismissal of the bad faith claim, but conclude that the contract at issue is ambiguous and the issue in this case is not properly decided on summary judgment. Affirmed in part, reversed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Edricke L. Peyton, Memphis, Tennessee, for the appellant, Onzie O. Horne, III.

M. Andrew Pippinger and Dennis P. Hawkins, Memphis, Tennessee, for the appellee, Stonebridge Life Insurance Company.

David F. Kustoff, Memphis, Tennessee, for the appellee, Gwendolyn R. Williams.

### OPINION

### I. Background

The material facts of this case are not in dispute. Plaintiff/Appellee Stonebridge Life Insurance Company ("Stonebridge") issued a policy insuring the life of Anita M. Williams-Horne ("Insured"). The policy was effective as of November 17, 1999. The default provisions in the policy prioritized the beneficiaries as follows, unless otherwise specified: (1) lawful spouse, if living; (2) equally to then living and lawful children; (3) equally to then living parents or parent; (4) the insured's estate. The policy indicated that this default beneficiary provision may be changed by signed request. The policy provided that $75,000.00 would be paid upon the Insured's death.

Insured married Defendant/Appellant Onzie Horne on January 28, 2000. Prior to the marriage, no specific beneficiary had been named to the policy and it is undisputed that the default provisions applied. On March 14, 2000, however, Insured executed a Beneficiary Change Request form ("beneficiary change form"). The form contained the following language:

> I, the undersigned policy owner, do hereby request the Company to revoke all prior beneficiary designations and optional methods of settlement, if any, and change the beneficiary of said policy as follows: Primary Beneficiary (or Beneficiaries) if living:
>
> Name          Relationship      Street Address, City, State, Zip
> _____    _____        _____
> _____    _____        _____
>
> Otherwise to Contingent Beneficiary (or Beneficiaries)
>
> _____    _____        _____
> _____    _____        _____
>
> The provisions in this Beneficiary Change takes precedence over any printed provisions in this policy which establish a beneficiary.

In the copy of the form returned to Stonebridge, Insured left the section entitled "Primary Beneficiary (or Beneficiaries), if living" blank. Instead, Insured filled in only the section entitled "Otherwise to Contingent Beneficiary (or Beneficiaries)" with the name of her mother, Defendant/Appellee Gwendolyn Williams.

Insured died on April 3, 2011. Mr. Horne was Insured's lawful husband at her death. Mr. Horne submitted a claim to Stonebridge on April 28, 2011. Stonebridge advised Mr.

Horne's counsel that Stonebridge sent a check to Mr. Horne and that his claim was considered "paid" on May 6, 2011. However, after Ms. Williams made a claim under the policy, Stonebridge issued a stop payment on the check to Mr. Horne. It is unclear whether Mr. Horne ever received the check, but it is undisputed that Mr. Horne never received the proceeds of the policy.

There was some confusion as to whether Stonebridge would pay Mr. Horne's claim despite Ms. Williams' objection, but ultimately Stonebridge filed an action for interpleader on June 16, 2011 with the Chancery Court of Shelby County pursuant to Rule 22.01 of the Tennessee Rules of Civil Procedure, discussed in detail below. Stonebridge simultaneously paid the amount owed on the claim into the Shelby County Chancery Court Clerk's office. Stonebridge amended its complaint on June 21, 2011 to correctly reflect the amount of the claim. Mr. Horne filed an answer and a counter-claim against Stonebridge for bad faith refusal to pay the proceeds of the insurance policy and a violation of the Tennessee Consumer Protection Act ("TCPA") on July 1, 2011. The counter-claim further asked that Ms. Williams be enjoined from "further slanderous or libelous statements regarding Mr. Horne, and any issues that surround the unfortunate death of the [Insured]."[1] Stonebridge filed a motion to dismiss the counterclaims for failure to state a claim upon which relief can be granted on July 15, 2011. Ms. Williams filed a motion for summary judgment on August 2, 2011, claiming that she was entitled to the policy proceeds as a matter of law. Mr. Horne responded with a motion for summary judgment of his own, asserting that he was entitled to the proceeds.

The trial court heard arguments on all outstanding motions on January 24, 2012. On February 9, 2012, the trial court entered an order with detailed findings of fact and conclusions of law. In the order, the trial court granted Stonebridge's motion to dismiss the counter-claims[2] and Ms. Williams' motion for summary judgment and denied Mr. Horne's motion for summary judgment. The order provided that the insurance contract at issue was plain and unambiguous and that, because Ms. Williams was the only specifically named beneficiary, she was entitled to the proceeds. On the same day, the trial court entered an order directing the Chancery Court clerk to pay the interpleaded funds to Ms. Williams, dismissing

_____

[1] Although it is unclear from the record, it appears that Mr. Horne is referring to what he calls an "insinuation" by Ms. Williams that Mr. Horne was somehow implicated in the Insured's death. Mr. Horne asserts that these allegations are false because the Shelby County Sheriff concluded that the Insured's cause of death was suicide.

[2] Specifically, the trial court dismissed Mr. Horne's claims against Stonebridge for bad faith failure to pay and violation of the TCPA. Mr. Horne does not challenge the dismissal of his TCPA claim on appeal.

all other pending claims not specifically addressed,[3] and assessing costs against Mr. Horne. Mr. Horne filed a timely notice of appeal.

## II. Issues Presented

Mr. Horne raises the following issues, which are taken from his brief:

1. Whether the trial court improperly enforced the insurance policy at issue, in a manner other than as written, to result in the payment of the insurance proceeds to a contingent beneficiary when the primary beneficiary was legally available to receive said payments?
2. Whether Mr. Horne's motion for summary judgment was improperly denied?
3. Whether Ms. Williams' motion for summary judgment was improperly granted?
4. Whether Stonebridge acted in bad faith by filing an action for interpleader of the insurance proceeds when its unambiguous policy provided for payment of proceeds to the decedent's spouse?
5. Whether Mr. Horne's counter-claims against Stonebridge for bad faith refusal to pay were improperly dismissed?

However, from our review, there are two dispositive issues in this case, which we state as follows:

1. Whether the trial court erred in granting summary judgment to Ms. Williams' and denying summary judgment to Mr. Horne, by finding that the insurance contract unambiguously provided that the proceeds should be paid to Ms. Williams?
2. Whether the trial court erred in dismissing Mr. Horne's counter-claim against Stonebridge for bad faith refusal to pay the insurance proceeds?

In the posture of Appellee, Stonebridge raises the following issue:

---

[3] One claim that was not specifically addressed in the prior order was Mr. Horne's request for injunctive relief prohibiting Ms. Williams from further defamation of his character. Mr. Horne does not challenge the dismissal of this claim on appeal.

1.      Whether Mr. Horne's appeal is frivolous such that pursuant to Tennessee Code Annotated Section 27-1-122, Stonebridge should be awarded its costs and expenses for having to defend this appeal?

## III. Analysis
### Interpretation of the Contract

Mr. Horne's first issues concern the trial court's decision to grant Ms. Williams' motion for summary judgment and deny his motion for summary judgment, resulting in the proceeds of the life insurance policy being awarded to Ms. Williams. The trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore de novo with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Abshure v. Methodist Healthcare–Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010).

The specific issues in this case concern interpretation of a contract. The question of interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contract is not entitled to a presumption of correctness on appeal. *Allstate Insurance Company v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *Angus v. Western Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). "This Court must review the document ourselves and make our own determination regarding its meaning and legal import." *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

The Tennessee Supreme Court recently discussed the court's role in interpreting contracts in *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700 (Tenn. 2008), stating:

> "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn.1975); *see also* *Christenberry* [ *v. Tipton*], 160 S.W.3d [487,] 494 [(Tenn. 2005)]. If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). In such a case, the contract is interpreted according to its plain terms as written, and the language used is taken in its "plain, ordinary,

and popular sense." ***Bob Pearsall Motors, Inc.***, 521 S.W.2d at 580; ***Planters Gin Co.***, 78 S.W.3d at 890. The interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. *See **Davidson v. Davidson***, 916 S.W.2d 918 922–23 (Tenn. Ct. App. 1995). The entire written agreement must be considered. ***D. & E. Const. Co. v. Robert J. Denley Co.***, 38 S.W.3d 513, 518–19 (Tenn. 2001).

> In construing a contract, the entire contract should be considered in determining the meaning of any or all of its parts. It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.

***Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.***, 690 S.W.2d 231, 237 (Tenn. 1985) (internal citations omitted).

However, on occasion, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous. ***Planters Gin. Co.***, 78 S.W.3d at 890. "Ambiguity, however, does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." ***Johnson v. Johnson***, 37 S.W.3d 892, 896 (Tenn. 2001) (internal quotation marks and citations omitted). The court will not use a strained construction of the language to find an ambiguity where none exists. ***Farmers-Peoples Bank v. Clemmer***, 519 S.W.2d 801, 805 (Tenn. 1975).

***Id.*** at 703–704.

In this case, the specific question that must be decided is who is the proper beneficiary of the insurance proceeds. "In construing the policy provision designating the beneficiary, courts have generally applied principles of law analogous to those used in construing bequests by will, with the intention of the insured deemed the controlling element, and extrinsic evidence admissible to clarify that intent when the designation is sufficiently

-6-

ambiguous." 4 Couch on Insurance § 59:9. Thus, this Court must first determine whether the policy at issue is sufficiently ambiguous that the issue must be resolved with the use of extrinsic evidence. If the contract is ambiguous even after this Court applies the pertinent rules of construction, then the interpretation of the contract "become[s] a question of fact such that summary judgment is not proper." *Planters Gin Co.*, 78 S.W.3d at 890 (citing *Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235, 1239 (5th Cir. 1981)).

The question of what constitutes an ambiguous insurance contract is well-settled in Tennessee: "Where language in an insurance policy is susceptible of more than one reasonable interpretation, [] it is ambiguous." *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn.1993) (citing *Moss v. Golden Rule Life Ins. Co.*, 724 S.W.2d 367, 368 (Tenn. Ct. App. 1986)). In other words, "'[a]mbiguity' in a contract is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." *NSA DBA Benefit Plan, Inc. v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997) (citing *Hillis v. Powers*, 875 S.W.2d 273, 276 (Tenn. Ct. App. 1993)). However, according to Williston on Contracts, courts must remember that:

> [n]ot every dispute with respect to the proper interpretation of insurance policy language constitutes an ambiguity. An insurance policy is not ambiguous simply because the parties disagree about its meaning. Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to create an ambiguity. Rather, an objective test is applied to determine whether an ambiguity exists in an insurance policy. Generally, an ambiguity in insurance policy language exists only if the language is fairly or reasonably susceptible to two or more different, but reasonable, interpretations or meanings. A genuine uncertainty or honest difference must exist as to which of two or more meanings is proper; a policy is not ambiguous simply because "creative possibilities" as to its meaning can be suggested by the parties.
>
> A policy term will not be found to be ambiguous simply because it is not defined within the policy, or because it has more than one meaning, or a broad meaning. Additionally, the fact that an insurance policy is a complex instrument requiring analysis or the need to interrelate multiple and various policy provisions, will not alone create an ambiguity . . . .

> Generally, whether insurance policy language is ambiguous, and therefore requires interpretation or construction, is a question of law to be decided by the court, and is thus fully reviewable on appeal.

16 Williston on Contracts § 49:17 (4th ed.) (footnotes omitted). We conclude that the contract at issue in this case indeed contains an ambiguity.

As discussed above, the policy itself provides default provisions that pay the proceeds of the insurance policy to closest living relatives "unless [the insured] specif[ies] otherwise." Therefore, prior to the change in beneficiary form executed by the Insured, the policy provisions clearly and unambiguously would have required payment to Mr. Horne after his marriage to the Insured. However, the Insured executed a change of beneficiary form, which must be considered as part of the contract in this case. See **D. & E. Const. Co.**, 38 S.W.3d at 518–19. In construing contracts, this Court is required to consider not only the printed provisions of the contract, but also the handwritten provisions:

> [I]is the imperative duty of courts to give effect to all the terms and language of the agreement. The construction is to be made on a consideration of the whole instrument, and this principle applies as well to instruments partly printed and partly written or typed as to those wholly printed or wholly written or typed.

17A Am. Jur. 2d Contracts § 386 (footnotes omitted). Thus, we must give effect to both the printed provisions in the contract and the handwritten beneficiary designation provided by the Insured. The change of beneficiary form clearly states that the Insured "request[s] the Company [i.e. Stonebridge] to revoke **all** prior beneficiary designations and option methods of settlement, if any."[4] (emphasis added). This language suggests that, by signing the beneficiary change form, all prior designations, including the default designations, were revoked. Despite this language, the Insured chose only to complete the portion of the form that changed the Contingent Beneficiary, arguably choosing to keep the prior designation regarding the primary beneficiary.

To determine the intent of the parties in this case, we first look to the plain language of the policy. Neither Primary Beneficiary nor Contingent Beneficiary are defined within the four corners of the contract. Both parties cite to Stonebridge's online glossary, which defines a Primary Beneficiary as: "The person who, upon the insured's death, has the first right to receive insurance proceeds." In contrast, Stonebridge defines a Contingent Beneficiary as:

---

[4] There is no dispute regarding any optional methods of settlement in this case.

"A secondary beneficiary designated by the insured to receive the benefits of the policy if the *named* primary beneficiary is deceased when the proceeds become payable." (emphasis added). Thus, the language suggests the Insured may only designate a Contingent Beneficiary if he or she also *names* a Primary Beneficiary. However, the Insured in this case clearly named a Contingent Beneficiary despite failing to specifically name a Primary Beneficiary. Because this Court's goal is to ascertain the intent of the parties, including the Insured, we must conclude that the dictionary definitions in this case conflict with the Insured's action in failing to name a Primary Beneficiary. The dictionary definitions are, therefore, not dispositive of this case.

Both Ms. Williams and Mr. Horne next argue that the specific provisions of the policy are unambiguous and in their respective favor. We respectfully disagree. According to Mr. Horne, the Insured's decision to clearly and unambiguously leave the space for the Primary Beneficiary blank illustrates her intent to maintain the default provisions, which would require the proceeds be given to him. However, if this Court were to credit this interpretation, it would be required to disregard the language providing that, by signing the beneficiary change form, the Insured was revoking all prior designations. In addition, despite the clear action of the Insured in leaving the Primary Beneficiary space blank, we note that the practical effect of adopting Mr. Horne's interpretation would have been exactly the same as had the default provisions applied in their entirety. While we do not conclude that this is an unreasonable interpretation of the policy, we are unwilling to adopt this interpretation in light of the clear language that all prior designations were revoked. In contrast, Ms. Williams points to the language providing that all prior designations have been revoked and argues that default provisions were also revoked by that language. Thus, she argues that she is the only proper beneficiary of the policy because she is the only named beneficiary. However, in order to credit Ms. Williams' interpretation of the contract, this Court would be required to ignore the fact that the Insured clearly chose to name Ms. Williams as only the Contingent Beneficiary of the policy. Taking the contract as a whole, the policy is clearly subject to more than one reasonable interpretation. In order to hold otherwise, this Court would be required to disregard portions of the contract. However, courts are cautioned that:

> As is true with contracts generally, a court seeking to divine the intent of the parties will construe an insurance policy as a whole, rather than focusing on individual terms, phrases, sentences, or sections. Each provision must be read in context with every other provision, and all of the provisions must be considered in their entirety. The court will seek to give effect to every policy provision, and will avoid a construction that will give effect to one provision while rendering another provision superfluous or without meaning.

-9-

16 <u>Williston on Contracts</u> § 49:14 (4th ed.) (footnotes omitted). Taking the contract as a whole, we must conclude that there "is doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one." ***NSA DBA Benefit Plan***, 968 S.W.2d at 795 (citing ***Hillis***, 875 S.W.2d at 276). Therefore, we conclude that the insurance contract at issue is ambiguous.

Having determined that the contract at issue is ambiguous, we next determine whether summary judgment was appropriate. As previously discussed, the Tennessee Supreme Court has held that if a contract is ambiguous, then the court applies established rules of construction to determine the parties' intent. ***Planters Gin Co.***, 78 S.W.3d at 890. "Only if ambiguity remains after the court applies the pertinent rules of construction does [the legal meaning of the contract] become a question of fact such that summary judgment is not proper." ***Id.*** "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." ***Empress Health & Beauty Spa, Inc. v. Turner***, 503 S.W.2d 188, 190 (Tenn. 1973). According to this Court, in ***Huber v. Calloway***, No. M2005–00897–COA–R3–CV, 2007 WL 208975, 3–4 (Tenn. Ct. App. July 12, 2007):

> Intent is revealed through an examination of the language chosen by the parties. ***City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey***, 126 S.W.3d 897, 903 (Tenn. 2004). This standard is an objective one, and the courts must determine intent by examining the meaning that a reasonable person would have derived from the words had such person been in the same situation as that of a party to the contract. ***Hardwick v. American Can Co.***, 113 Tenn. 657, 670, 88 S.W. 797, 801 (1905); ***Moore v. Moore***, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980).

In this case, we cannot discern the Insured's intent from the plain language of the policy. Instead, we conclude that the contract is subject to more than one reasonable interpretation and extrinsic evidence is needed to discern the Insured's intent. First, as argued by Ms. Williams, the provisions in the policy suggest that a reasonable person in the Insured's place may have intended to name Ms. Williams as the Primary Beneficiary on the policy, but mistakenly wrote her name in the space marked for Contingent Beneficiaries. Second, as argued by Mr. Horne, a reading of the policy shows that the Insured only changed the Contingent Beneficiary rather than the Primary Beneficiary. A reasonable interpretation of this action would be that the Insured intended to maintain the prior beneficiary designation under the default provision. Both these interpretations are reasonable and based on the "plain,

ordinary, and popular sense" of the words in the contract. ***Bob Pearsall Motors, Inc.***, 521 S.W.2d at 580; ***Planters Gin Co.***, 78 S.W.3d at 890.

According to Couch on Insurance, the question of who the intended beneficiary is can often result in ambiguities that cannot be decided on the face of the contract:

> The insured's designation of a particular beneficiary does not always make it clear whether that person is intended to be a primary or secondary beneficiary. . . .
>
> \* \* \*
>
> The dispute may result from such simple matters as the designation not being neatly confined to the form or application areas provided for primary and contingent beneficiaries, or result from changes of beneficiary that are in a slightly different—hence ambiguous—form.
>
> \* \* \*
>
> In determining these cases, the designation is generally subject to the rule that the court's goal is to determine and enforce the intent of the insured. In addition to any provisions contained on the relevant form on this issue, the court may ordinarily receive and consider extrinsic evidence for the purpose of determining the insured's intent, including the purpose for which the insurance was procured, provided that the court does, in fact, determine that the designation is ambiguous.

4 Couch on Insurance § 59:19 (footnotes omitted). Because of the ambiguity in the terms of the policy after the execution of the beneficiary change, we are unable to discern the Insured's intent from the four corners of the contract. Accordingly  extrinsic evidence is admissible to determine the Insured's intent:

> [I]f the language is ambiguous and the intention of the parties does not clearly appear therefrom, other matters may be taken into consideration in ascertaining such intention, such as the circumstances or conditions surrounding the execution of the contract, the situation of the parties, the subject matter of the contract, and the object or purpose of the contract.

45 C.J.S. Insurance § 573 (footnotes omitted); *see also* Couch on Insurance § 59:9 ("In construing the policy provision designating the beneficiary, courts have generally applied principles of law analogous to those used in construing bequests by will, with the intention of the insured deemed the controlling element, and extrinsic evidence admissible to clarify that intent when the designation is sufficiently ambiguous."). In addition, where the intentions of the parties are in doubt, we conclude that summary judgment is inappropriate. *See **Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton***, No. W2011–01693-COA-R3-CV, 2012 WL 1187981, at *4 (Tenn. Ct. App. April 9, 2012) ( "[I]f the Contract is, in fact, ambiguous, the case is not ripe for summary judgment."). The central question in this case is who the Insured intended to be the Primary Beneficiary of this policy. "Whether or not a particular person has been named as beneficiary is a question of fact and is for the trier of fact, where the evidence leaves the issue in doubt." 4 Couch on Insurance § 59:13 (footnote omitted). Accordingly, we reverse the trial court's grant of Ms. Williams' motion for summary judgment, affirm the denial of Mr. Horne's motion for summary judgment, and remand for a trial in which both parties are permitted to introduce extrinsic evidence regarding the Insured's intent.

While this issue presents an issue of first impression in this state, courts in at least one jurisdiction have likewise concluded that the issue presented in this case creates a disputed issue of material fact that cannot be decided on summary judgment. In ***Holzberlein v. OM Financial Life Insurance Company***, No. 08-cv-02053m 2009 WL 706671, (D. Colo. March 12, 2009), the United States District Court for Colorado concluded that summary judgment was inappropriate in a case wherein there was a question regarding how the decedent intended the proceeds of an annuity to be paid after her death. The court noted that the decedent's intentions were subject to several reasonable interpretations and concluded that these differing interpretations constituted "a disputed issue of material fact." *Id.* at *2. The issue in the case involved the decedent's attempted addition of the plaintiff as a beneficiary on an existing annuity. The annuities previously designated three other persons as equal primary beneficiaries. The insurance company found the change of beneficiary form improperly executed. The District Court disagreed and concluded that the decedent's unambiguous intent was to add the plaintiff as a beneficiary on the annuity. The District Court, however, found an ambiguity as to whether by adding the plaintiff, the decedent intended to change the status of the existing beneficiaries. *Id.* at *1. The Court explained that:

> Decedent's intent when adding Plaintiff as a beneficiary is susceptible to three reasonable interpretations: (1) Decedent actually meant to add Plaintiff as a primary beneficiary without changing the status of the other primary beneficiaries, but mistakenly wrote the names of the four intended primary beneficiaries in the space marked for contingent beneficiaries;

(2) Decedent actually meant to convert the original primary beneficiaries to contingent beneficiaries and add Plaintiff as an additional contingent beneficiary; or (3) Decedent actually meant to add Plaintiff as a contingent beneficiary and did not mean to convert the original primary beneficiaries into contingent beneficiaries.

*Id.* at \*2. Because there was more than one reasonable interpretation, the District Court concluded that extrinsic evidence was admissible to determine the decedent's intent. Finding no extrinsic evidence in the record, the District court denied summary judgment. There is likewise no extrinsic evidence in this case that shows the Insured's intent among the two competing interpretations offered by Mr. Horne and Ms. Williams.[5] Thus, summary judgment is likewise improper in this case.

Ms. Williams argues, however, that the Insured's action in naming only a Contingent Beneficiary in the change of beneficiary form does not create an ambiguity because only one person was actually named by the Insured as a beneficiary of the policy at all. To support this argument, Ms. Williams cites the recent case of *Neill v. Minnesota Life Insurance Company*, No. 10-144-S-REB, 2011 WL 2182573 (D. Idaho June 3, 2011). In *Neill*, the United States District Court for Idaho affirmed summary judgment to the plaintiff daughters of the deceased insured. Much the same as in this case, the insured named her daughters as the Contingent Beneficiaries of the life insurance policy. The policy, however, contained default provisions which, if applicable, provided that payment would be made to the Insured's husband. The court concluded that under the policy, the contract unambiguously required that the proceeds of the policy would be paid to the daughters and granted summary judgment in their favor. While the facts of *Neill* are highly analogous to the case at bar, the contract in *Neill* is different. In *Neill*, the insurance contract provided that the default provisions would apply only "[i]f there is no eligible beneficiary, or if the insured did not name one." Thus, the default provision did not distinguish between a Primary Beneficiary and a Contingent Beneficiary. Because the insured in *Neill* named a beneficiary, her daughters, the plain language of the contract provided that the default provisions did not

---

[5] In his brief, Mr. Horne attempts to argue that there is extrinsic evidence in the record showing the Insured's intent; however, he simply points to the language of the contract and the events in this case, which occurred well after the Insured's death. This does not constitute evidence of the Insured's intent. In addition, in arguing that the contract is unambiguous, Mr. Horne argues that the Insured was an organized, professional, intelligent woman who would not have made a mistake in placing her mother's name in the wrong place on the beneficiary change form. While we agree that evidence of this type would be admissible extrinsic evidence to show the Insured's intent, the record in this case contains nothing more that Mr. Horne's bare assertions regarding the Insured's personality. Accordingly, there is no properly admitted extrinsic evidence for this Court to consider.

apply.

While the contract in *Neill* provides that the default provisions will only apply if the beneficiary becomes ineligible or a beneficiary is not named, the contract in this case provides that the default provisions apply "unless [the insured] specif[ies] otherwise." Thus, while the insured in *Neill* was merely required to name an eligible beneficiary, regardless of whether the beneficiary was Primary or Contingent, to disable the default provisions, the language regarding the applicability of the default provisions is much less specific. Here the contract creates a distinction between a Primary Beneficiary and a Contingent Beneficiary and it is this distinction that creates an ambiguity with regard to whether the default provisions apply. Specifically, the Insured did otherwise specify a Contingent Beneficiary; she did not, however, otherwise specify a Primary Beneficiary, despite language in the contract that all prior designations were revoked. Accordingly, the language of the contract creates an ambiguity as to whether a reasonable person in the Insured's place would have intended to remove the default provisions by otherwise specifying only a Contingent Beneficiary of the policy proceeds. Because of this ambiguity, summary judgment in favor of Ms. Williams was inappropriate.

**Bad Faith**

Mr. Horne next argues that the trial court erred in dismissing his claim against Stonebridge for bad faith refusal to pay. The trial court dismissed Mr. Horne's claim for failure to state a claim upon which relief can be granted pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure. It is well settled that a motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn.1997). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, courts are limited to an examination of the complaint alone. *See Wolcotts Fin. Serv., Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See Cook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934 (Tenn.1994).

Tennessee Code Annotated Section 56-7-105 provides a remedy for bad faith refusal to pay an insurance claim to the rightful beneficiary. In order to succeed on a claim of bad faith, the plaintiff must show that:

(1) the policy of insurance must, by its terms, have become due

and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith.

***Palmer v. Nationwide Mut. Fire Ins. Co.***, 723 S.W.2d 124, 126 (Tenn. Ct. App.1986). In his complaint, Mr. Horne asserts that: (1) the policy became payable upon the death of the Insured; (2) he made a formal demand for payment; (3) rather than paying the proceeds to Mr. Horne, Stonebridge implead the funds to the court; and (4) Stonebridge's action in interpleading the funds was made in bad faith, evidenced by its action in first paying, then stopping payment on the proceeds. Therefore, Mr. Horne argues that the trial court erred in dismissing his claim and that the issue should have been allowed to go to the jury.

In contrast, Stonebridge argues that even taking Mr. Horne's allegations as true, it never refused to pay the proceeds of the insurance to Mr. Horne. Instead, Stonebridge simply requested that the trial court determine who was entitled to the proceeds and it was the trial court who refused to pay Mr. Horne the proceeds. Thus, Stonebridge argues that it cannot be liable for bad faith refusal to pay. Stonebridge points out that, by interpleading the funds to the court is was simply availing itself of the established procedure of Rule 22.01 of the Tennessee Rules of Civil Procedure in order to limit its liability. Rule 22.01 provides that:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he or she is not liable in whole or in part to any or all of the claimants. . . .

Mr. Horne cites no Tennessee cases in which an insurance company has been found in bad faith for complying with the procedure of Rule 22.01, nor has our research revealed any. In his reply brief, Mr. Horne cites ***Michelman v. Lincoln Nat. Life Ins. Co.***, 685 F.3d 887 (9th Cir. 2012), in which the United States Court of Appeals for the Ninth Circuit held that insurers are subject to a duty of good faith when following the procedures of interpleader. However, the Court held that "[t]he threshold to establish good faith is necessarily low so as not to conflict with interpleader's pragmatic purpose, which is 'for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund.'" ***Id.*** at 894 (citing

*Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010)). As such, the Court concluded that because the insured was faced with uncertainty about the ownership of the policy, it did not act in bad faith in interpleading the funds. *Id.* at 898. Although not binding precedent, "[f]ederal case law interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule." *Jones v. Professional Motorcycle Escort Service*, *L.L.C.*, 193 S.W.3d 564, 570 (Tenn. 2006) (citing *Harris v. Chern*, 33 S.W.3d 741, 745 n.2 (Tenn. 2000)).

Stonebridge likewise argues that, even if it could have acted in bad faith by choosing to follow the interpleader procedures, its decision to interplead the proceeds of the insurance policy in this case was reasonable when faced with uncertainty as to the proper beneficiary of the policy proceeds. We agree. In *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn. Ct. App. 1982), this Court explained that:

> The bad faith penalty is not recoverable in every refusal of an insurance company to pay a loss. *An insurance company is entitled to rely upon available defenses and refuse payment if there is substantial legal grounds that the policy does not afford coverage for the alleged loss. If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the imposing of the bad faith penalty.*

*Id.* at 852 (quoting *Nelms v. Tennessee Farmers Mutual Ins. Co.*, 613 S.W.2d 481, 484 (Tenn. Ct. App. 1978)); *see also* *Ginn v. American Heritage Life Ins. Co.*, 173 S.W.3d 433, 443–44 (Tenn. Ct. App. 2004) (reversing a bad faith penalty imposed by the jury when the insurer had reasonable grounds to refuse to pay). In this case, we have concluded that the contract at issue contains an ambiguity, which makes resolution of this issue impossible at the summary judgment stage. In doing so, we have concluded that both Mr. Horne's and Ms. Williams's competing interpretations of the contract are reasonable. Thus, Stonebridge was faced with two reasonable competing claims for the proceeds on this insurance policy when it chose to interplead the funds with the Chancery Court. Given the competing reasonable claims in this case, we cannot conclude that Stonebridge lacked "substantial legal grounds" that the policy was not, in fact, payable to Mr. Horne. To adopt Mr. Horne's argument and find Stonebridge acted in bad faith for availing itself of the interpleader procedure when it was faced with this uncertainty would essentially make Rule 22.01 a nullity. We decline to do so. As such, taking all of Mr. Horne's factual allegations as true, we affirm the trial court's dismissal of Mr. Horne's statutory bad faith claim for failure to state a claim upon which relief can be granted.

Finally, Stonebridge argues that it should be awarded costs and expenses incurred on appeal pursuant to Tennessee Code Annotated Section 27-1-12, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

The decision to award damages based on the filing of a frivolous appeal rests solely in the discretion of this Court. *Whalum v. Marshall*, 224 S.W.3d 169, 180 (Tenn. Ct. App. 2006). "Imposing a penalty for a frivolous appeal is a remedy which is to be used only in obvious cases of frivolity and should not be asserted lightly or granted unless clearly applicable, which is rare." *Henderson v. SAIA, Inc .*, 318 S.W.3d 328, 342 (Tenn. 2010). An appeal is frivolous when it has "no reasonable chance of success," *Jackson v. Aldridge*, 6 S.W.3d 501, 504 (Tenn. Ct. App.1999), or is "so utterly devoid of merit as to justify the imposition of a penalty." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.3d 202, 205 (Tenn. 1978). After reviewing the record in this case, we conclude that an award of costs and expenses to Stonebridge is appropriate. Mr. Horne points to no evidence in the record that Stonebridge acted with ill will or in an effort to intentionally deprive Mr. Horne of the proceeds of the policy. Instead, the record shows that Stonebridge was faced with uncertainty regarding the proper beneficiary of the policy and simply availed itself of the established procedures of Rule 22.01 of the Tennessee Rules of Civil Procedure. Mr. Horne cited no Tennessee law in which an insurer was found to have acted in bad faith for following the procedure of Rule 22.01. Indeed, the only law cited by Mr. Horne that recognizes that bad faith may occur in interpleader actions supports a conclusion that Stonebridge did not act in bad faith in this case. Accordingly, we conclude that Mr. Horne's claims against Stonebridge had no likelihood of success and Stonebridge should be awarded costs and expenses incurred on appeal.

## IV. Conclusion

The judgement of the Chancery Court of Shelby County is affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion. In addition, Appellee Stonebridge Life Insurance Company is awarded its costs and expenses incurred in defense of this appeal and this cause is remanded to the trial court for the assessment of damages in accordance with Tennessee Code Annotated Section 27-1-122. Costs of this

appeal are taxed one-half to Appellant Onzie Horne, and his surety, and one-half to Appellee Gwendolyn Williams, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE