IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 15, 2020

## ERIC WAYNE BARTON v. MECHELLE SCHLOMER BARTON

Appeal from the Chancery Court for Blount County
No. 2015-021          Telford E. Forgety, Jr., Chancellor
_____

### No. E2019-01136-COA-R3-CV
_____

In this appeal arising out of the parties' divorce, the Husband raises issues pertaining to the court's classification, valuation, and division of the marital estate, as well as the court's award of attorney's fees to Wife. Upon our review, we vacate those parts of the judgment that awarded a lien on real property belonging to LLCs in which Husband had 100 percent ownership interest as well as an award to Wife of an interest in a contingent contractual claim against the United States Government that is an asset of an LLC in which Husband had 100 percent ownership interest. Additionally, in light of this Court's determination that the contractual claim is an asset of an LLC owned 100 percent by Husband, we conclude that the record requires the court to reconsider the valuation of the parties' business interests in the LLC that has the contractual claim. Although the trial court must necessarily consider the impact that the contractual claim has on the parties' net marital business interests, we note that the court's current calculations, which are divorced from a proper consideration of the impact of the contractual claim, overvalued the net marital business interests based upon its own findings. In light of the fact that the case is being remanded for further consideration of the valuation of the parties' net marital business interests, we also vacate the trial court's equitable division of the estate and its award of attorney's fees to Wife and remand for further consideration. We also decline to award Wife her attorney's fees on appeal. The balance of the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded.**

ARNOLD B. GOLDIN, J.,[1] delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and KENNY W. ARMSTRONG, J., joined.

C. Scott Taylor and Margo J. Maxwell, Knoxville, Tennessee, for the appellant, Eric Wayne Barton.

_____

[1] This case was assigned to the authoring judge on September 15, 2020.

Melanie E. Davis, Maryville, Tennessee, for the appellee, Mechelle Schlomer Barton.

## OPINION

### I.    BACKGROUND AND PROCEDURAL HISTORY

This is an appeal of a divorce case and centers on the classification, valuation, and division of an extensive marital estate amassed during an 18-year marriage. Eric Barton ("Husband") and Mechelle Barton ("Wife") met while Husband was in the Marine Corps, stationed at Camp Lejeune, North Carolina and Wife was employed at the PX on the base. The two were married in North Carolina in 1998. Each had a child from a previous marriage, and together, they had a daughter in 2000. In 2005, they adopted two sons, who were ages 3 and 4 at the time. The family later moved to Blount County, Tennessee in 2006.

In 2005, Husband began doing private government contract work with the United States Army in Iraq. He subsequently began his own business, entering into contracts directly with the United States Government involving security, vehicle maintenance, and logistics. In 2007, he started Vanquish Worldwide, LLC ("Vanquish Worldwide"), a company that contracted with National Afghan Trucking to transport government goods to 400 military bases in Iraq. The business was very successful, and the parties amassed considerable assets during the years 2011-2015 until the contract was terminated in December 2015, a year before it was set to expire. Husband also started many other businesses and acquired significant real estate during the course of the marriage.

Around this same time the marriage relationship deteriorated, and the parties separated in February 2015. Husband filed a complaint for divorce on the ground of irreconcilable differences on March 11, 2015. Wife filed an answer and counter-complaint for divorce on April 2, 2015, alleging irreconcilable differences and inappropriate marital conduct. The parties were able to settle most of their issues relating to parenting and child support prior to trial, but the trial court was called upon to resolve the grounds for awarding the divorce, divide the marital property, and resolve Wife's claim for alimony and attorney's fees.

Following a three-day trial in September 2016 at which Husband, Wife, and Wife's accounting expert testified, the court entered a Memorandum and Order on November 14, 2016, in which it adjudicated some, but not all, issues in the case.[2] The Final Judgment for Divorce was ultimately entered on July 6, 2018, adjudicating all outstanding matters.

---

[2] Among other things, the court approved the parties' parenting plan. No issue is raised in this appeal concerning the parenting plan or child support; moreover, the parties' children have all reached the age of majority as of this writing.

In the Final Judgment for Divorce, which incorporated the Memorandum and Order, the trial court granted Wife a divorce on the ground of Husband's inappropriate marital conduct and classified, valued, and divided the marital estate, with Wife receiving approximately 55 percent and Husband 45 percent. Husband was ordered to pay Wife the sum of $7,294,570.30 as alimony *in solido* to adjust the marital distribution in the estate, payable over a period of 10 years, with 119 monthly payments of $30,394.04 and a final balloon payment of $3,677,679.54. The Final Judgment also confirmed that the court awarded a lien on real property "whether the property is titled in the name of Eric Wayne Barton, Lexlin Gypsy Ranch,[3] Vanquish Worldwide, LLC, and/or Vanquish Leasing" to secure payment of the alimony *in solido* award. Wife was also awarded her attorney's fees in the amount of $43,571.57 as additional alimony *in solido*.

The trial court also concluded, as it had in its Memorandum and Order, that a certain "contingent contractual claim" of Vanquish Worldwide against the U.S. Government, potentially worth $32 million dollars, was a marital asset subject to division. The court then proceeded to allocate the first $6,664,000.00 of any recovery from Vanquish Worldwide's claims, after litigation expenses were paid, to Husband, and allocated "any recovery beyond the first $6,664,000.00 as 55% to the Wife, and 45% to the Husband, net after reasonable litigation expenses."

Both parties filed motions to alter or amend the Final Judgment. Wife subsequently voluntarily dismissed her motion. Husband's motion was granted in part, in that the paragraph of the Final Judgment concerning the contractual claim was amended to provide that each party would be responsible for his or her *pro rata* share of taxes accrued from the amounts received. The court denied Husband's motion in part, refusing to strike the liens awarded to Wife on LLC assets to secure her alimony *in solido* award. Husband filed a timely appeal.

## II. ISSUES PRESENTED

In his appellate brief, Husband presents several issues for our review. Condensed and restated, we determine the issues to be as follows:

1. Whether the trial court erred in classifying certain business entities that are nonparties to the divorce action as marital property and awarding Wife liens and recovery against the assets of the business entities.

2. Whether the trial court erred in its valuation of the marital property.

3. Whether the trial court erred in the division of the marital property.

---

[3] The record shows that Lexlin Gypsy Ranch is a horse ranch where the parties bred and sold Gypsy horses.

4. Whether the trial court erred in awarding Wife the balance of her outstanding attorney's fees of $43,571.57 when Husband had previously given Wife a sum of money to cover her attorney's fees and Wife receives monthly alimony payments of $30,394.04.

For her part, Wife seeks her attorney's fees incurred in defending this appeal.

### III. ANALYSIS

This case was tried by the trial court sitting without a jury. Accordingly, we review the case *de novo* upon the record with a presumption of correctness regarding the trial court's findings of fact and will affirm the trial court's findings unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Cannon v. Loudon Cty.*, 199 S.W.3d 239, 241 (Tenn. Ct. App. 2005) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)). In order for the evidence to preponderate against a particular finding of fact, it must support another finding of fact with greater convincing effect. *Ingram v. Wasson*, 379 S.W.3d 227, 237 (Tenn. Ct. App. 2011) (citation omitted). "[W]hen the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues." *Riggs v. Riggs*, 250 S.W.3d 453, 456 (Tenn. Ct. App. 2007) (citing *McCaleb v. Saturn Corp.,* 910 S.W.2d 412, 415 (Tenn. Workers Comp. Panel 1995); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). As such, we give great weight to the credibility accorded to a witness by the trial court. *Id.* (citations omitted). No presumption of correctness, however, attaches to the trial court's conclusions of law, and our review is *de novo. Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000).

### A. The Classification of Business Entities as Marital Property and the Award of Liens to Wife

Dividing marital property is a three-step process: first, the court must "identify and classify the parties' marital and separate property"; second, the court must "value the marital property (and, when appropriate, the separate property)"; third, the court must "divide or apportion the marital property." *Melvin v. Johnson-Melvin*, No. M2004-02106-COA-R3-CV, 2006 WL 1132042, at *10 (Tenn. Ct. App. Apr. 27, 2006) (Koch, J., concurring) (citing *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998)). "Marital property" is defined in part as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36–4–121(b)(1)(A). By contrast, the Code defines "separate property" as including, among other things, "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b)(2).

"Questions regarding the classification of property as either marital or separate, as opposed to questions involving the appropriateness of the division of the marital estate, are inherently factual." *Bewick v. Bewick*, No. M2015-02009-COA-R3-CV, 2017 WL 568544, at \*7 (Tenn. Ct. App. Feb. 13, 2017) (quoting *Owens v. Owens*, 241 S.W.3d 478, 485 (Tenn. Ct. App. 2007)). "As such, we employ the familiar standard of review outlined in Rule 13(d) of the Tennessee Rules of Appellate Procedure." *Id.* (citing *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005)); *see also Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009).

We first address Husband's concern pertaining to whether the trial court erred in classifying Vanquish Worldwide as a marital asset. The language of the divorce decree with which Husband takes issue is as follows:

> The Court agrees with the language proposed by defense counsel that the Wife has an interest in Vanquish Worldwide, LLC, whatever and wherever, it is organized. *Vanquish Worldwide, LLC is a marital asset* and the Wife has an interest in Vanquish Worldwide, LLC as a marital asset.

(Emphasis added).

Husband takes issue with the italicized language above and contends that "there is no authority under Tennessee law for classifying [Vanquish Worldwide] as marital property." In his list of marital assets, Husband delineated the percentage of his ownership interest in each of the businesses he listed, including his 100 percent ownership interest in Vanquish Worldwide. Though the parties disagreed over the LLC's value, both agreed that the ownership interest should be awarded to Husband in the division. Both parties testified that the business was started by Husband during the marriage. Under Tennessee law, a membership interest in a limited liability company is a type of personal property. Tenn. Code Ann. § 48-249-502(a).[4] Because Husband's interest in Vanquish Worldwide was acquired during the marriage, it is presumed to be marital property. *Owens*, 241 S.W.3d at 485. Husband does not attempt to argue that his interest in this LLC was separate property and concedes that his "membership in Vanquish Worldwide, LLC may be a marital asset, subject to valuation and division as a marital asset."

The language utilized in the trial court's order in connection with Vanquish Worldwide is somewhat inconsistent. The trial court's Memorandum and Order, incorporated into the Final Judgment, discusses this asset under the heading "Business Interests." But in the language of the order cited by Husband, the trial court stated that the LLC is a marital asset, rather than stating that Husband's 100 percent ownership of the

---

[4] Tennessee Code Annotated section 48-249-502(a) states, "A membership interest in an LLC is personal property. A member has no interest in specific LLC property. All property transferred to or acquired by an LLC is property of the LLC."

- 5 -

LLC is a marital asset. Notwithstanding this imprecision in language, it is clear that the trial court's intent was to classify Husband's interest in Vanquish Worldwide as marital property, which it awarded to Husband. We affirm the trial court's classification of Husband's ownership interest in Vanquish Worldwide as a marital asset.

However, the real issue, as we perceive it, is whether the court had jurisdiction to act on the assets of the LLCs themselves once Husband was awarded his full membership interest in the LLCs as part of the court's division of the assets. Specifically, Husband raises the issue of whether the court erred in classifying an asset of Vanquish Worldwide, i.e., the $32.8 million contractual claim against the United States Government, as marital property and dividing it between the parties and, whether the trial court further erred in awarding Wife a lien to secure her alimony *in solido* payment against various parcels of real property that were owned by the LLCs and not Husband, individually.

As to the lien against the real properties owned by the LLCs in which Husband was awarded his membership interest, the judgment reads, in part, as follows:

> 6. The Plaintiff shall pay to the Defendant the sum of Seven Million Two Hundred Ninety-Four Thousand Five Hundred Seventy Dollars and 30 Cents ($7,294,570.30) as alimony *in solido* in order to adjust the distribution of the marital estate. . . . *The Wife will retain a lien upon the real property awarded to the Husband, and the real property owned by the businesses, including Lexlin Gypsy Ranch, Vanquish Worldwide, LLC and Vanquish Leasing, which were awarded to the Husband, to secure the payment of this debt.*

(Emphasis added).

Husband argues that a lien against real property owned by "corporate entities separate and independent from Husband and non-parties to the lawsuit [for divorce]" is not enforceable because the court has no subject matter jurisdiction over the businesses.

In response, Wife first asserts that Husband "expressly agreed that these properties were marital properties" and thus invited the error of which he now complains. Wife does not, however, cite to a place in the record where Husband's express agreement is stated, and we discern no such agreement from our review of the record. Husband listed these properties in a section of his list of assets and liabilities that is titled "Disputed Assets." Given that the list contains other sections titled "Marital Assets" and "Marital Liabilities" and reflects the parties' disputed valuations of the assets in question, we do not agree with Wife that Husband conceded that these particular properties owned by the LLCs were marital property.

Wife acknowledges that "it is true that the general rule is that a divorce decree cannot affect the property of a corporation or limited liability company that is not a party

to an action even if the corporation is wholly owned by one of the parties to the divorce." She then argues, however, that the trial court "treated these entities as the alter ego of the Husband . . . [and] accordingly treated these real properties as marital property and thus properly subjected these same properties to a lien to secure the payment of alimony in solido to Wife." While Husband does not disagree that "i[t] can be argued that the [t]rial court impliedly, and improperly, pierced the corporate veil of Vanquish Worldwide, LLC," he argues that the issue of piercing the corporate veil was never raised by Wife or proven at trial.

Wife now attempts to raise the issue, for the first time on appeal, of whether the trial court impliedly pierced the corporate veil in her recasting of Husband's issues and points to the evidence in the record relative to the factors considered when a court is called upon to pierce the corporate veil of an LLC. *See Edmunds v. Delta Partners, L.L.C.*, 403 S.W.3d 812, 829-30 (Tenn. Ct. App. 2012); *Federal Deposit Ins. Corp. v. Allen,* 584 F.Supp. 386, 397 (E.D. Tenn. 1984). In her arguments, however, she does not cite us to the record where the trial court was ever called upon to pierce the corporate veil of the LLCs involved. Indeed, the record contains only two references to this concept, both in pleadings filed by Husband, who certainly was not advocating for its application. He first mentions it in responding to Wife's untimely motion to alter or amend that was voluntarily dismissed, and again in a memorandum of law supporting his motion to alter or amend in which he states, "No motion to pierce the corporate veil has been filed, and the Court has not specifically found that the corporate veil of Vanquish is to be pierced."

Furthermore, the court's order contains no consideration of any of the eleven *Allen* factors, which courts in this State use to determine whether to pierce the corporate veil of a limited liability company. *Edmunds*, 403 S.W.3d at 829-30; *Allen,* 584 F.Supp. at 397. Nor does the order contain any language by the trial court demonstrating that it was ever asked to pierce the corporate veil or thought it necessary to do so. Parties will not be permitted to raise issues on appeal that they did not first raise in the trial court. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006). Accordingly, Wife having not raised this issue in the trial court, the issue is waived.

Here, the trial court's judgment attempts to reach the real estate assets of both Husband and of three LLCs owned by Husband to secure his alimony *in solido* obligation. While Tennessee Code Annotated section 36-4-121(f)(2) grants courts the authority to impose a lien to effectuate an equitable distribution, and the court's judgment, once recorded, operates as a lien on the real property owned by Husband, *see* Tenn. Code Ann. § 25-5-101(b)(1), there is no statutory authority here for the court to act upon parcels of real estate owned by the LLCs. Despite Husband's 100 percent ownership interest in the LLCs that owned these parcels of real estate, Tennessee Code Annotated section 48-249-502(a) provides that "[a] member has no interest in specific LLC property. All property transferred to or acquired by an LLC is property of the LLC." *See also* Tenn. Code Ann. § 48-215-101(a).

There is no debate that the LLCs were not parties in this case, even though Vanquish Worldwide filed a motion to intervene, which was denied. Thus, the court did not have jurisdiction over these entities and their assets, only the parties' ownership interest in the LLCs themselves. We, therefore, conclude that the real property owned by the LLCs could not be subjected to a lien to guarantee payment of Husband's alimony obligation, and we vacate those portions of the trial court's judgment granting Wife a lien on those parcels of real property owned by the LLCs.

Next, Husband argues that the trial court erred in finding that Wife has a vested interest in a $32.8 million contractual claim that his business, Vanquish Worldwide, was pursuing against the U.S. Government based on the LLC's work for the government in Afghanistan.

Husband argues that the contractual claim is the property of a non-party, asserting that the claim belongs solely to the LLC. Though the trial court recited that "Plaintiff, Eric W. Barton, individually and as President and CEO of Vanquish Worldwide, LLC has a contingent contractual claim," the evidence does not support such a finding. There was no evidence admitted at trial showing that Husband had pursued this appeal in his individual capacity.

Because the assets of an LLC are separate from those of its members, we conclude that the contractual claim was not marital property and was therefore not subject to distribution to Wife. We, therefore, vacate the trial court's award to Wife of any interest in the contractual claim of Vanquish Worldwide.

In view of the fact that the trial court's order clearly reflects that it treated the contractual claim as an asset of Husband, separate from the value of the marital interest in Vanquish Worldwide, the value of Vanquish Worldwide and the net martial business interests have necessarily not been accurately computed. Indeed, the contractual claim of Vanquish Worldwide is relevant to an accurate valuation of Vanquish Worldwide and the total value of the parties' marital business interests. Therefore, we vacate that portion of the trial court's order pertaining to the valuation of the parties' marital business interests and remand this case so that the trial court can consider the impact of the contractual claim on the court's valuation. The trial court is free to take additional proof on the valuation of Vanquish Worldwide.

## B.  The Valuation of The Marital Property

We next address numerous other concerns relating to the trial court's valuation of the marital property and the evidence it relied on in that process. As we consider these issues, we bear in mind our standard of review, as stated in *Wallace v. Wallace*:

- 8 -

The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (citations omitted).

We first consider Husband's contention that the trial court erred in relying upon a 2015 financial statement "that was not certified by a CPA" and was "based on outdated 2014 figures." The trial court addressed this financial statement specifically in its Memorandum and Order, as incorporated into the Final Judgment:

The evidence as to these assets is confusing, contradictory, and not as definitive as the Court would have liked. For example, the Husband values all the business interests at zero. . . . The Court simply cannot accredit these valuations. . . . In any event, in valuing the businesses the Court has considered all the evidence, including:

The fact that the Husband filed a financial statement with his bank dated August 20, 2015, and certified as correct by his accountant, on which he valued the business interests at $20,517,600.00. . . . This statement also showed gross assets of some $59,000,000.00; total liabilities of some $4,335,000.00; net worth of some $54,623,000.00; and yearly income of some $3,000,000. *Id.* The drastic difference between this statement and the Husband's valuations at trial was not adequately explained.

***

There have been some $1,900,000.00 in other assets which have been liquidated by the Husband and allegedly infused into the businesses. . . .

The Court does not ignore the fact that there have been certain occurrences— such as a $7,000,000.00 judgment in an arbitration proceeding, and the termination of an Afghan trucking contract—which may have had a negative

effect on the businesses. Some of this is reflected in the Marital Liabilities section of Exhibit "A"—which shows liabilities almost triple those shown on the August 2015 financial statement. Nevertheless, the Court simply cannot believe that the businesses have decreased in value from $20,517,000.00 in 2015 to zero in 2016.

The 2015 financial statement was admitted into evidence without objection during the cross-examination of Husband. The cover of that document recites that the statement was submitted to a bank for the purpose of receiving a loan and contains Husband's signature (not the accountant's, as found by the trial court) certifying that the statement "is true and correct in all respects" as of the date it was signed, August 20, 2015 – approximately 13 months prior to trial. Husband contends that the statement was not correct or current at the time of trial and "did not reflect the values of the parties' marital [interest in certain] properties, specifically Vanquish Worldwide, LLC."

In *Powell v. Powell*, a similar argument was made, and this Court held:

The expert testimony was not the only evidence presented as to the value of the [husband's] check cashing business, however. Additional evidence, in the form of financial statements which Mr. Powell submitted to various financial institutions, was also presented. In these statements, Mr. Powell represented the value of his interest in the check cashing business to be $3,370,000.00 as of February 7, 2001, ten months prior to the grant of the divorce. Mr. Powell now asserts that these financial statements overstated the true value of his business. Such assertions notwithstanding, "any statement, whether oral or written, made by or attributable to a party to an action, which constitutes an admission against his interest and tends to establish or disprove any material fact in the case, is competent evidence against him in such action." *Dailey v. Bateman,* 937 S.W.2d 927, 930 (Tenn. Ct. App. 1996) (quoting *Jones v. Lenoir City Car Works,* 216 Tenn. 351, 392 S.W.2d 671, 673 ([Tenn.] 1965)). Accordingly, these financial statements were properly considered by the trial court as evidence of the value of the check cashing business.

124 S.W.3d 100, 105 (Tenn. Ct. App. 2003) (footnotes omitted).

As no objection was raised to the admission of this report, the trial court did not err in considering it in valuing the marital estate. *See* Tenn. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . .[i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context"). The trial court took Husband's financial statement into account, considered Husband's testimony about the value of his business interests as of the time of trial, including the significant liabilities he and his

businesses faced since the 2015 financial statement was prepared, and concluded that it "simply cannot accredit these valuations" of "all the business interests at zero."

It is well settled that "[t]he weight, faith, and credit to be given the witnesses' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Whitaker*, 957 S.W.2d at 837 (citing *Town of Alamo v. Forcum–James Co.,* 327 S.W.2d 47, 49 (Tenn. 1959); *Sisk v. Valley Forge Ins. Co.,* 640 S.W.2d 844, 849 (Tenn. Ct. App. 1982)). The Final Judgment reflects the court's consideration of all the evidence before it, including both the 2015 financial statement and Husband's testimony about the values as of the time of trial. We conclude that Husband's contentions with respect to the 2015 financial statement are without merit.

In the same vein, we next consider whether the trial court erred in relying upon Wife's expert witness for valuations of the parties' real property and interests in certain businesses. Husband contends that the trial court erred by allowing Wife's expert, Van Elkins, to testify over Husband's continuing objections when Mr. Elkins did not provide his completed report until the morning of the trial, as a result of which Husband argues he was "greatly prejudiced". In response, Wife argues that Husband fails to point to any particular testimony of her expert to which he objected and that "[a]ny criticism of the method or approaches used by the expert should have been dealt with at trial and factored into his credibility."

Generally, "questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc*, 955 S.W.2d 257, 263 (Tenn. 1997) (citing *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993)). We review the decision to admit the testimony of expert witnesses under the abuse of discretion standard. *Id.* at 263-64. A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is contrary to logic or reasoning and that causes an injustice to the party complaining. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Once the expert's opinion is admitted, the following standard applies:

> In this nonjury case, the trial judge as the trier of fact had the opportunity to observe the manner and demeanor of all of the witnesses as they testified from the witness stand. The weight, faith, and credit to be given the witnesses' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court.

*Whitaker*, 957 S.W.2d at 837 (Tenn. Ct. App. 1997) (citing *Town of Alamo v. Forcum–James Co.,* 327 S.W.2d 47, 49 (Tenn. 1959); *Sisk v. Valley Forge Ins. Co.,* 640 S.W.2d 844, 849 (Tenn. Ct. App.1982)).

At the outset of our consideration of this issue, we address Husband's contention that the trial court erroneously relied on Wife's expert in its valuation of the real estate assets. The record does not support Husband's contention. Mr. Elkins did not testify about the values of the real property. The trial court's order states that "Wife has valued the real estate according to the real estate tax appraisals." Husband's counsel acknowledged as much, stating to the court, "[I]f you look at the list of assets on all the real properties, her values are based – we've already got them in there. We either agree on the base, or they are all based on the tax appraisals, which are already in the record." The values included on Wife's assets and liabilities spreadsheet reflect the tax appraisal values. Moreover, the trial court's order recites:

> In general, the Wife has valued the real estate according to the real estate tax appraisals. The Husband has valued them according to their purchase price . . . or according to price as adjusted by his opinion as to later factors such as improvements added. . . [I]n arriving at values for the assets … the Court has accepted the Wife's evaluations in some instances, the Husband's in others, and has set values between the two in still others. *See Owens,* 241 S.W.3d at 486.

In any event, the trial court's order makes clear that any valuations of the real property by Mr. Elkins were not the basis of its decision; thus, Husband's contention in this regard is without merit.

Prior to Wife's expert, Mr. Elkins, testifying concerning the valuations of the businesses, Husband's attorney objected to him being allowed to testify on the basis that he changed his valuations of Vanquish Insurance and Vanquish Leasing on the morning of trial from $0 each to $243,546 and $2,529,791, respectively. Though other business entities' values were also slightly modified, these two entities were the only ones with which Husband's counsel took issue. Wife's counsel argued in response that the report was furnished on the morning of trial due to Husband's failure to supplement his interrogatory responses with updated financial information until the week before trial and that the valuations were updated by Mr. Elkins as soon as possible.

The trial court sustained Husband's objection in part and did not permit Mr. Elkins to testify as to the changed valuations of Vanquish Insurance and Vanquish Leasing. Mr. Elkins was permitted to testify, however, as to the remaining businesses and was subjected to rigorous cross-examination by Husband's counsel.

In its order, the trial court expressly adopted the values as set forth in Husband's 2015 financial statement for Vanquish Insurance and Vanquish Leasing of $0 for each. On the basis of the record presented, we discern no abuse of discretion in the trial court's exclusion of Wife's expert's opinion of the value of Vanquish Insurance and Vanquish Leasing or the court's admission of his opinion as to the valuation of the remaining

businesses. The weight the trial court assigned to Mr. Elkins' testimony was within its purview as the trier of fact. *Whitaker*, 957 S.W.2d at 837.

Next, we consider Husband's contention that the trial court erred in rejecting his valuations of the real properties and business interests and failing to make discounts for "outstanding liabilities and negative impact on the businesses . . . due to the termination of an Afghan trucking contract, a $7,000,000 judgment in an arbitration proceeding, and other occurrences." As we have previously noted in this Opinion, the trial court's order expressly takes these considerations pertaining to the Afghan trucking contract and arbitration judgment into account, and we, therefore, conclude that Husband's argument is without merit.

Moreover, Husband's contentions that his valuations of the real properties are "factual and realistic" does not establish that the trial court improperly valued the four real estate assets that he identifies in his brief. There were two conflicting values presented with respect to the real property: Husband's opinion and the tax appraisal values presented by Wife, which were admitted into evidence without objection. Both were proper evidence of value that the court was permitted to consider. *See State ex rel. Smith v. Livingston Limestone Co., Inc.*, 547 S.W.2d 942, 943-44 (Tenn. 1977) (observing that the owner of real property is "qualified, by reason of his ownership alone, to give an opinion in evidence of the value of his land" and also that, "the opinion of the managing officer of a corporation with respect to the market value of the corporation's real property should be received in evidence"); *Lucchesi v. Lucchesi*, No. W2017-01864-COA-R3-CV, 2019 WL 325493, at *6 (Tenn. Ct. App. Jan. 23, 2019) (observing that "[t]he use of a tax appraisal to value a property has been held to be competent evidence of [the] value of real property") (citing *Hancock v. Hancock*, No. E1999-01003-COA-R3-CV, 2000 WL 224366, at *3 (Tenn. Ct. App. Feb. 28, 2000)).

In *Powell*, this Court opined that "'[t]he value of a marital asset is determined by considering all relevant evidence regarding value.' If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence." 124 S.W.3d at 105–06 (quoting *Wallace*, 733 S.W.2d at 107; citing *Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995)). Because the values set by the court were within the range of values presented, we find no error in the court's use of a "middle ground" valuation.

We next consider whether the trial court erred in its calculation of the net amount of the value of the business interests. Husband argues that the "trial court erred in using the total gross figure of $20,517,000 for business interests to calculate the value of the marital estate in that the Trial Court made specific fact findings . . . that should have reduced the total gross figure for business interests to $17,538,326." In other words, Husband contends that the court adopted Wife's values for certain assets, which were lower than the value contained in the August 2015 financial statement, but did not use those new

- 13 -

figures in its calculation, resulting in Wife receiving $1,638,270.70 more than the court intended.

There is no question that the trial court used the referenced $20,517,000 figure as the starting point for its calculation, but Wife asserts in response that Husband is trying "to use the spreadsheet [contained in Exhibit A appended to the trial court's Memorandum and Order] to create the impression that the Court separately valued certain businesses at a lower value than what is on [the 2015 financial statement]." Wife explains that "[t]he spreadsheet used by the court in its order inadvertently contains some values from Wife's accountant in the far right column, but those numbers were never used in the court's analysis and were never adopted by the Court as its findings."

Wife, however, does not support this argument with citation to the record or even an explanation demonstrating how or why Wife's accountant's figures got into Exhibit A's far-right column, which is labeled as "Court's Disposition." The record contains no other apparent explanation for the values which appear in this column other than that the trial court assigned a value to these entities, within the range of alternatives presented to it. Accordingly, the values need to be reconciled with the 2015 financial statement upon which the trial court acknowledged it based its initial figure.

A comparison of the two sets of values follows:

| Entity | 2015 Financial Statement, Schedule F Value | Trial Court's Value |
|---|---|---|
| Vanquish Worldwide, LLC | $15,754,034 | Unknown |
| Front Range Training & Consulting, LLC | $740,000 | $53,585 |
| Vanquish Worldwide, Inc. | $283,566 | Unknown |
| Lexlin Gypsy Ranch | $2,950,000 | $1,244,821 |
| Froots Corp of TN, LLC | $170,000 | Unknown |
| Froots, Inc. | $370,000 | $0 |
| Barton Media, LLC | $250,000 | $32,920 |
| Domestic Estate Management Association (DEMA) | $0 | $52,069[5] |
| Peak Technical Institute, LLC | $0 | $218,072 |
| BOBA Agency, LLC | Not listed | $0 |

_____

[5] The evidence does not support this valuation. Mr. Elkins testified that even though Wife's proposed valuation of DEMA was $52,069, it was a mistake. He further testified that Husband's interest in DEMA "should only be valued at $26,530, . . . which [represents his ownership interest of] 51 percent of the [$]52,069." Husband valued this asset at $0. We have used the $26,530 figure in our calculations.

- 14 -

| | | |
|---|---|---|
| BOBA Franchise Co., LLC | Not listed | $0 |
| BOBA Services, LLC | Not listed | $207 |
| BOBA, LLC | Not listed | $7,029 |
| CAP Trucking, Inc. | Not listed | $5,863 |
| Custom Ins. Sol., LLC | Not listed | $152 |
| Vanquish Logistics, LLC | $0 | $0 |
| Vanquish Leasing, LLC | $0 | no value assigned |
| Vanquish Insurance, Inc. | $0 | no value assigned |
| Angel Capital Group | $0 | $0 |
| Venture 360 | $0 | no value assigned |
| Evans Lakes, LLC | Not listed | no value assigned |
| River Vista Properties, LLC | Not listed | no value assigned |
| Vanquish Express, LLC | Not listed | $0 |
| Lionsbridge Capital Holdings, LLC | Not listed | no value assigned |

According to Schedule F of the 2015 Financial Statement, the total value of the listed business interests was $20,517,600.00. Attempting to add up the trial court's assigned values for all the listed businesses is not possible, as several are valued as "unknown." However, adding up the values from the financial statement, which the court adopted, but substituting the court's new value when it assigned a specific value, results in a total valuation of $17,796,779 for the marital business interests. We then subtract $12,320,243 for the business-related debts, a value upon which the parties agreed, and $1,007,239 for Husband's liability for payroll taxes, as found by the trial court in subsections (B) and (D) of its Memorandum and Order, to reach a net value of $4,469,297 for the business interests. (This is $2,720,221 lower than the net value of $7,189,518 in the court's recapitulation).

Of course, this net value of $4,469,297, does not itself present a complete picture. Although it is clear that the trial court overvalued the net marital business interests based upon its own findings, the court's calculations were, as alluded to earlier in this Opinion, divorced from a proper consideration of the impact of the contractual claim held by Vanquish Worldwide. The trial court effectively treated that contractual claim as a personal asset of Husband's that was subject to division. As we have concluded, it was an asset of the LLC, not subject to division. Its relevance relates to the value of Vanquish Worldwide. On remand, when the trial court reconsiders the valuation of the parties' marital business interests, the court should only specifically revalue Vanquish Worldwide in light of its previous failure to properly account for the contractual claim. It should then take the above calculation error into account when reevaluating the value of the total marital business interests.

## C.  The Trial Court's Division of the Marital Estate

Although Husband also challenges the trial court's division of property, we do not reach this question in this appeal. In light of the fact that we are remanding for the trial court to reconsider the value of the parties' marital business interests, namely to account for the value of the significant contractual claim of Vanquish Worldwide, we conclude that we must also vacate the trial court's distribution of marital property. *See Trezevant v. Trezevant*, 568 S.W.3d 595, 623 (Tenn. Ct. App. 2018) (noting that in light of a remand for further analysis on property valuation, "we must necessarily . . . vacate the distribution of marital property").

### D. Wife's Attorney's Fees

Although an issue is also raised as to the propriety of the award of attorney's fees to Wife, we do not reach this issue either. "An award of attorney's fees in divorce cases is treated as a form of spousal support, and the award is characterized as alimony in solido." *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001) (citing *Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999), *overruled on other grounds by Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Smith v. Smith*, 984 S.W.2d 606 (Tenn. Ct. App. 1997); *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988)). The issue is only properly considered after the foregoing issues of estate valuation and distribution are settled. We therefore vacate the trial court's award of attorney's fees. *See Trezevant*, 568 S.W.3d at 624 ("[T]he court's award of attorney's fees to Wife is also vacated by virtue of the need to re-evaluate the marital estate.").

### E. Wife's Attorney's Fees on Appeal

Wife requests her attorney's fees on appeal, a decision that is within our discretion. *See Seaton v. Seaton*, 516 S.W.2d 91, 93-94 (Tenn. 1974); *Davis v. Davis*, 138 S.W.3d 886, 890 (Tenn. Ct. App. 2003). We respectfully deny Wife's request for attorney's fees incurred in this appeal.

## IV. CONCLUSION

Upon our review of the record and consideration of the issues raised by the parties, we vacate the liens awarded to Wife against the real properties owned by the various LLCs. We further vacate the award to Wife of any recovery from the contractual claim of Vanquish Worldwide, LLC. We further conclude that the inclusion of the contractual claim as an asset of Vanquish Worldwide, LLC requires the trial court to reconsider the valuation of the parties' business interests, namely the valuation of Vanquish Worldwide. Although the trial court must necessarily consider the impact that the contractual claim of Vanquish Worldwide has on the parties' net marital business interests, we note that the court's current calculations, which are divorced from a proper consideration of the impact of the

- 16 -

contractual claim, overvalued the net marital business interests based upon its own findings. Because we remand for further proceedings related to the valuation of the marital estate, we vacate the trial court's property division, as well as its award of attorney's fees, and remand for reconsideration. Further, we respectfully decline to award Wife any attorney's fees in this appeal. Time does not stand still, and we are mindful of the fact that the "value placed on marital property should, as near as possible[,] reflect the value of the property on the date that it is divided." *Dobbs v. Dobbs*, No. M2011-01523-COA-R3-CV, 2012 WL 3201938, at *3 n.3 (Tenn. Ct. App. Aug. 7, 2012). Here, a final division has yet to occur in light of our disposition and remand, and we leave it to the trial court's discretion as to what proof is needed to reconsider its valuation of Vanquish Worldwide as part of its reevaluation of the marital estate as it takes proper account of the contractual claim of Vanquish Worldwide. *See Trezevant*, 568 S.W.3d at 623-24 (noting that "courts must rely on values of the marital property as close in time as possible to the division of marital property" and leaving it in the "discretion of the trial court" as to whether updated information was necessary or appropriate). The balance of the judgment is affirmed.

_____
ARNOLD B. GOLDIN, JUDGE